J. R. Swan, C. J.
James S. Oliver owned about sixty acres of land at the time of his decease. The question now before the court is, to whom did this land descend, he having died intestate. The land came to him by descent from his mother, Keziah Oliver, deceased. He died in 1851. He was the only son of Keziah, and had no children. The persons, therefore, to inherit, must be found either among the line • of his mother’s or his father’s relatives.
And first, as to what relatives of his mother were living at the time of James S. diver’s decease. She had no brothers or sisters then living of the whole blood, but had a brother of the half-blood, David Shumard.
She also had uncles, brothers of her father then living, to wit, Simeon Sanders, and others.
As to James S. diver’s relatives, on his father’s side living when he died. James S. Olivers’ father, after the death of Keziah, his mother, again married, and by this second marriage had children, to wit, Elizabeth Oliver and others, who are the brothers and sisters of the half-blood of James S. Oliver.
The sixty acres of land was originally owned by the father of Keziah, to wit, James Sanders, who died intestate, and this, among other lands, descended to Keziah and his other children, all of whom are dead, leaving no. *504 children or legal representatives, except as above mentioned.
The ancestor of James S. diver, from whom the estate came, was his mother Keziah.
The estate originally came to her from her father, etc.
The “ancestor,” however, mentioned in our statute of descents, is any one from whom the estate is inheritable; and the ancestor from whom it must, in law, be understood to have come to the intestate, is he from whom it was immediately inherited. Curren v. Taylor, 19 Ohio Rep. 36; Lessee of Prickett v. Parker, 3 Ohio St. Rep. 396; Brewster v. Benedict, 14 Ohio Rep. 385. Keziah, therefore, and not James Sanders, must be deemed the ancestor from whom the estate came to James S. Oliver.
Now, at the time of James S. diver’s decease, this land must, by the law of descent, pass either—
1st. To his half-brothers and sisters, Elizabeth Oliver, and others, who are of the blood of the intestate, James S. diver, but are not of the blood of his ancestor, Keziah, from whom the land came by descent; or,
2d. To David Shumard, the half-brother of his mother, Keziah, who is of the blood of Keziah; or,
3d. To Simeon Sanders and others, the brothers of Keziah’s father.
Having thus presented the statement of the facts, their application to the law of descents will dispose of some of these questions without comment.
The statute of 1835, (Swan’s Stat. old ed. 286,) provides :
“ Sec. 1. That when any person shall die intestate, having title or right to any real estate of inheritance in this state, which title shall have come to such intestate by descent, devise, or deed of gift from any ancestor, such estate shall descend and pass in parcenary to his or her kindred in the following course :
“ Mrst — To the children of such intestate, or their legal representatives.
“ Second — If there be no children or their legal representatives, the estate shall pass to the brothers and sisters of the intestate, who may be of the blood pf the ancestor from whom the estate came, or their legal representatives, whether such brothers and sisters be of the whole or the half-blood of the intestate.
“ Third — If there be no brothers or sisters of the intestate, of the blood of the *505 ancestor from whom the estate came, or their legal representatives, and if the estate came by deed of gift from an ancestor who may be living, the estate shall ascend to such ancestor.
“Fourth — If the ancestor from whom the estate came be deceased, the estate shall pass to the children of such ancestor, or their legal representatives; if there be no children of such ancestor or their legal representatives, the estate shall pass to the brothers and sisters of such ancestor, or their legal representatives; and for want of such brothers or sisters, or their legal representatives, to the brothers and sisters of the intestate of the half-blood, or their legal representatives, though such brothers and sisters be not of the blood of the ancestor from whom the estate came.
“Fifth — If there be no brothers or sisters of the intestate, or their legal representatives, the estate shall pass to the next of lrin to the intestate of the blood Of the ancestor from whom the estate came.”
In the application of the facta in this case to the above statute, it will be perceived — ■
1st. That the intestate, James S. diver, having never had any children, left no legal representatives of children.
2d. He left no brothers or sisters of the blood of his ancestor, Keziah.
3d. His ancestor, Keziah, being dead, the estate could not ascend to her.
4th. There being no children of Keziah, the ancestor, or their legal representatives, the estate must pass to the brothers and sisters of Keziah, if there be any; and if there be none, then to the half-brothers and sisters of James S. Oliver, the intestate.
The only question in fact in the case is, whether David Shumard can be deemed, under the statute, the brother of Keziah or not; if he is, the estate passed to him,'and if not, the estate passed to the half-brothers and sisters of James S. diver. That this is the only question, will be apparent from the statute of descents above quoted, of 1835. (Swan’s Stat. old ed. 286.)
The question then is, whether the words “ brothers and sisters of such ancestor,” as used in the fourth subdivision of the section, include half-brothers and sisters.
Hnder the English law, although the words “brothers and sisters ” include brothers and sisters of the whole and *506 half-blood, and half-brothers were recognized as of kin in the degree of brothers and sisters, yet under the canons of inheritance of England, it was requisite that the heir should be the nearest kinsman of the whole blood; and the estate escheated to the lord if there were none but kinsman of the half-blood to inherit. This rule of inheritance, which excluded the half-blood, grew out of another more ancient rule, to wit, that the heir to an ancient feud must make out his pedigree from the first donee or purchaser. It was, however, found impossible, in rude and unlettered ages, either to make proof as to who was the first fiduciary or purchaser, or to prove actual descent from him; the law, therefore, substituted for such proof, and, in lieu of it, proof that the claimant was of the whole blood to the person last in possession; for it was said, that he who is my kinsman of the whole blood can have no ancestors beyond or higher than the common stock, and must be my ancestors also, and mine, vice versa, are his; he, therefore, is very likely to be derived from that unknown ancestor of mine from whom the inheritance descended. But a kinsman of the half-blood has but one half of his ancestors, above the common stock, the same as mine. Hence the half-blood was excluded. Now this rule of descent, peculiar to England, and confessedly unreasonable and unjust in its practical operation, (and which has been abolished by statute 3 and 4 Will. IV. 2 Wood. sec. 150, n.) would seem, at first view, to have something to do with the construction of the words “brothers and sisters,” in the English law. But it has, in fact, no application whatever. While kinsmen of the whole blood — that is, such as are derived from the same couple of ancestors — shall inherit to the exclusion of the half-blood, such as half-brothers, yet the law of England recognizes brothers of the whole and half-blood to be of kin in the degree of brothers. Crooke et al. v. Watt et al., 2 Vern. 124. Such seems also to be the rule of the civil law, and has been generally adopted in this country. Gardner v. Collins, 3 *507 Mason, 403; 2 Pet. U. S. Rep. 58; Clarke v. Sprague, 5 Blackf. 412; Sheffield v. Lovering, 12 Mass. 490.
The English canon, which excluded the half-hlood from inheriting real estate, did not do so on the ground that half-brothers of an ancestor were not his brothers, much less on the idea that they were not of the blood of such ancestor; but because they were not, presumptively, of the blood of the first feud or purchaser from whom the estate was originally derived. The rule and its reason have no application whatever to our statute of descents, which finds the ancestor in the person from whom it was immediately inherited, and not in the original first feudatory or purchaser. The term ancestor, in our statute, has no reference whatever to such first purchaser, but refers to the person from whom the intestate derived the estate. Hence the fact that Keziah inherited the estate in question from her father, James Sanders, does not make James Sanders the ancestor from whom the estate came to James S. Oliver. James S. Oliver, the intestate, inherited the estate from his mother; and she must be deemed the ancestor of James S. diver, from whom the estate descended.
Under the decisions above referred to, half-brothers of an ancestor are included in and designated by brothers, wherever that term is used without limitation. "We do not perceive anything, in the terms or context of the statute under consideration, to control or limit this general meaning.
Half-brothers of the ancestor of the intestate are of the blood of such ancestor, but not of the whole blood. Half-brothers of the intestate may not have one particle of blood of the ancestor of the intestate in their veins. Now the statute, in cases where an estate came by gift, devise, or descent, from an ancestor to an intestate, undertook to provide for the descent of the estate to the relatives of the intestate, and to the relatives of his ancestor, from whom the estate came; and in so doing, had to deal with half-brothers and sisters of the ancestor, and with half-brothers *508 and sisters of the intestate who were, and who were not, of the blood of such ancestor. The general assembly have used the words brothers and sisters, of the whole or the half-blood, more frequently than was necessary to give meaning to their words, in the second subdivision of the section of the law under consideration, inasmuch as the words “brothers and sisters of the blood of the ancestor,” in that subdivision, would include brothers and sisters of the half-blood. But this was, no doubt, to explain what they meant by the words, “ brothers and sisters who may be of the blood of the ancestor;” knowing that, under the English law, half-brothers could not inherit real estate, and, for all practical purposes of descent, were not deemed the kindred of the ancestor. This probably being the reason why half-brothers and sisters are unnecessarily mentioned in the second subdivision of the section, it affords no ground for treating the words, “ brothers and sisters of the ancestor,” in the fourth subdivision, as being limited to brothers and sisters of the whole blood. Indeed, in the third and fifth subdivisions of the section, the words, “brothers and sister's,” are used to mean brothers and sisters of the whole and half-blood.
To limit the words of the fourth subdivision to brothers and sisters of the ancestor of the whole blood, would not be in accordance with the presumptive intention of the legislature. Eor the general assembly, in disposing of the descent of estates which came to the intestate by gift, etc., .from an ancestor, would, it may be presumed, consult the probable wishes of such ancestor, in case the object of his bounty had no children, or descendants of the blood of the donor. The ancestor would undoubtedly, in such case, prefer that his half-brothers should inherit the estate rather than half-brothers of the intestate, in whose veins not one drop of ancestral blood flowed. James S. Oliver’s half-brothers are strangers in blood to Keziah, from whom James S. inherited. She, undoubtedly, would have preferred that the inheritance should pass to her half-brother, *509 David Shumard; and the statute, in disposing of ancestral estates, would (as we think the statute has done) respect the natural wishes of the ancestor from whom the estate came, and devolve it upon the half-blood of the ancestor, rather than upon strangers in blood.
We therefore hold that, under the fourth subdivision of the law of 1885, the half-brothers and sisters of the ancestor are included in the words “ brothers and sisters of such ancestor,” and are preferred^ to the brothers and sisters of the intestate, of the half-blood, who are not of the blood of the ancestor from whom the estate came.
The land in controversy descended to David Shumard, subject to the curtesy of William B. Oliver in a part thereof, and a decree must be entered accordingly.
Brinkerhoef, Scott, Sutliee and Peck, JJ., concurred.