DEAN and Another *v.* LYON and Another.

*A.* in one clause of his last will, devised to his sons *B.* and *C.*, his real estate, describing it, and his personal, subject to his widow's dower. He further directed his executors to purchase "from the widow her dower, in the said premises, for the use of said *B.* and *C.*"

*Held,* that this was a devise of the entire personalty, subject to the payment of debts, and the 150 dollars expressly allowed by statute to the widow, and of the real estate, subject to the widow's dower.

*Held,* also, that such a devise is valid.

APPEAL from the *Dearborn* Circuit Court.

PERKINS, J.—*Samuel Evans* made his last will and testament and died. He devised thereby, in one clause, to *Charles* and *George Evans,* his sons, his real estate, particularly describing it, and his personal, subject to his widow's dower. And he further directed that his executors should purchase "from the widow her dower in the said premises above mentioned, for the use of said *Charles* and *George,*" which purchase was made accordingly, at the price of 500 dollars.

There came to the hands of the executors, after paying debts, it is alleged, personal property of the value of 2,000 dollars, 150 dollars of which were paid, pursuant to the statute, to the widow.

She subsequently married *Lyon,* who jointly with her filed his petition to the Circuit Court, claiming one-third of the 2,000 dollars as belonging to his wife under the statute of distribution. The case is governed by the code of 1843.

The executors demurred to the petition. The Court overruled the demurrer, holding that the widow of *Evans* was entitled to the sum claimed in the petition.

The first question propounded is, in what sense did the testator, in making his will, use the word dower? It is insisted that he intended it to embrace one-third of the real and personal estate. Such a signification would be a perversion of its technical meaning; and without clear evidence of a different intention, we must

hold it used with that meaning. We see no evidence that it was intended, in this case, to be incorrectly applied. Indeed, the will furnishes some internal evidence to the contrary; for a little further on in it, being as a whole very short, the testator directs his executors to purchase, if they can, from the widow her dower in the premises mentioned. Here the testator undoubtedly used the word dower in reference to the real estate; for the executors would necessarily make the purchase with a portion of the personal estate, which, according to the other supposition, would be then, one-third of it, the property of the widow. The executors would thus purchase her dower, in part, with her own money. Again, why would the testator wish the executors to purchase the widow's dower in the personal estate? It would be, under the circumstances of this case, simply handing the amount in the money of the boys in one hand, and receiving back the same amount from the widow in the other. Without something showing a reason for such an operation, we would not presume, against the established meaning of words, that it was directed. By the will, then, all the personal estate was given to the boys, subject to the payment of debts, including 150 dollars to the widow; and also all the real estate, subject to the widow's dower. And the next question is, could the testator thus deprive his widow of a share of his personal estate? By our law the wife has no inchoate right in personal property, as she has in real estate, of her husband. He can sell or give away the former without her consent, conveying a clear title, to the last moment of his life. He can also devise by will particular articles of personal property, clear of all claims of the wife or widow. Not so with real estate.

Can he dispose, by will, of all his personal estate save what the statute expressly gives to the widow? In speaking of the distribution of the estates of those who die testate, our statute seems to contemplate only the surplus undisposed of by will, and unused in the payment of debts, &c..

*Blackstone*, book 2, p. 492, says, that by the common law, as it stood as late as *Edward* III., a man could not, by his will, deprive his widow of the one-third of his personal estate. He adds, "But this law is at present altered by imperceptible degrees, and the deceased may now, by will, bequeath the whole of his goods and chattels, though we cannot trace out when first this alteration began." See, also, the excellent work of *Williams* on Personal Property, p. 250.—See *Addington* v. *Wilson*, 5 Ind. R. 137.

- The testator, in this case, then, had the power to dispose of all his personal estate, except, &c., to his sons; and, we have seen, that by his will he did so dispose of it. It follows that the plaintiffs in the petition show no right to have what they ask for, and that they should be dismissed from Court. Other questions were discussed which need not be noticed.

*Per Curiam.*—The decree is reversed with costs. Cause remanded with instructions to dismiss the petition.

*W. S. Holman*, for the appellants.

*J. T. Brown*, for the appellees.