------o------

GAYLORD and Others *v.* DODGE.

WIDOW.—*Rights in Husband's Real Estate*—The rights of a surviving wife in the real estate of her husband are, in this State, those created by statute alone.

SAME.—*Trust.*—*Descent.*—A. purchased from B. certain real estate, for which he paid in money and in other land in the conveyance of which to B. the wife of A. joined with her husband. At A.'s request, and without the knowledge or consent of his wife, who supposed that the entire property so bought from B. was conveyed to her husband, a portion of it was conveyed by B., by deed absolute on its face, to C., a son of A. by a former marriage, and the deed was delivered by B. to A. Nothing of the transaction was known by C. till he received, in due course of mail, at his place of residence

in another state, a letter written to him by A. on the day of the conveyance, informing him of the purchase and of the making of the deed to him as aforesaid, and that A. would want a deed from C., in a few days, to the children of E. and F., daughters of A. by said former marriage; that A. would send a deed for C. to sign in a few days; that the property was then in C.'s name, and that A. wished C. to tell the wife of the latter how it was situated then, so that she would know all about it if C. should be taken away; and if A. should, he wished the property so deeded to C. to be made over to said children, the rents and profits to be paid them yearly for their support, and when they should become twenty-one years old, "to have the property in fee simple, to be disposed of as they please;" that A. thought he had bought the B. property very low; that it cost B. a certain sum, "and as property is advancing, it must bring that again, but I shall not sell it, as it is in a good location, and will let the children have it;" and requesting C. to not let any one know but that he (C.) had paid for half the B. property. C. immediately answered A. by letter, acknowledging the receipt of the letter from A., and saying that C. had told his wife about the arrangement A. proposed making in case C. should be taken away, and that she would follow the injunction of A.'s letter, in that event. C. and his said wife had no children. Subsequently, without consideration, at A.'s request, C. and his said wife conveyed said real estate to A. for life, then in separate parcels, to E. and F. for life, remainders in fee simple to said children of E. and F. After the execution of the deed from B., A. made expensive improvements on the land so conveyed to C., collected rents, and paid taxes and assessments of all kinds. A. died, intestate, leaving his said wife and issue by her surviving him.

*Held,* that no use or trust resulted in favor of A. from said conveyance of B. to C., and that said letters did not create a trust in favor of A. or confer on him the right to the use, control, or disposition of the property conveyed to C., but that said letters did create a trust in favor of the children of E. and F. which a court of equity would have enforced.

*Held,* also, that the variation in the agreement between A. and C. did not affect the rights of A.'s surviving wife.

*Held,* also, that no interest in the real estate so conveyed to and by C. descended under the statute to the widow of A.

TRUST.—*Executed Use.*—*Statute Construed.*—Section 13, 1 G. & H. 652, applies where the trust is expressly declared and the beneficiary named in the conveyance, the title of the trustee being nominal only; in which case this statute executes the use.

APPEAL from the Tippecanoe Circuit Court.

This was a complaint against the appellants by Rebecca A. Dodge, claiming title, as the widow of Nathan B. Dodge, deceased, to an undivided third part of certain real estate.

Issues were formed, and the cause was submitted to the court for trial. The court found "for the plaintiff, and that

she is the owner in fee simple, as surviving widow of Nathan B. Dodge, deceased, of the undivided one-third of the land described in her complaint, and that she is entitled to a conveyance vesting in her said undivided interest."

A motion for a new trial having been overruled, judgment was rendered on the finding. A commissioner was thereupon appointed to make and execute to the plaintiff a deed of conveyance for the undivided third part of the real estate described in the complaint; which was accordingly executed, reported to the court, and approved.

One of the reasons filed for a new trial is, that the finding of the court is contrary to the evidence.

The facts of the case presented by the evidence are these:—

Nathan B. Dodge, the decedent, was twice married. The issue of the first marriage were a son, Joshua C. Dodge, and three daughters, Martha A. Gaylord, Mary J. Chadwick, wife of Rufus Chadwick, and Mrs. Granger. Martha A. Gaylord and Mary J. Chadwick, with their children, were the defendants below, and are the appellants in this court.

Nathan B. Dodge and Rebecca A., the appellee, were married on the 24th of July, 1850, and lived together until the death of the former on the 16th of May, 1866. The issue of their marriage, Nathan B. Dodge, Jr., who was born in November, 1851, still survives.

On the 9th of April, 1859, Nathan B. Dodge, Sr., purchased of Albert S. White certain real estate in the city of Lafayette, for the sum of twelve thousand dollars, of which the sum of four thousand dollars was paid by a conveyance to White of certain real estate then owned by said Nathan B. Dodge, Sr., in which conveyance the appellee joined. The residue of the purchase money was paid by said Nathan B., in cash.

On the day of the purchase, White, by the direction of Nathan B. Dodge, Sr., and without the knowledge of the appellee, conveyed a part of the real estate sold by him, of

the estimated value of eight thousand dollars, and which is the subject of this suit, to Joshua C. Dodge, the son of said Nathan B. and then residing in Boston, Massachusetts. This deed was absolute on its face, no trust being declared therein; but it was delivered to Nathan B. Dodge, Sr., who, on the same day, wrote to his son, Joshua C., as follows:—

"LAFAYETTE, April 9th, 1859.

"I have this day purchased the A. S. White property. I pay twelve thousand six hundred dollars for it. I have fourteen rods on Columbia street, twelve rods on Missouri street, and eighty-one feet fronting on South street. I gave him the house I live in, at thirty-two hundred dollars, a lot that I got in payment for my farm, at three hundred dollars, and six thousand dollars cash in hand, one thousand dollars on the first day of July next, one thousand dollars in six months, six hundred dollars in one year from to-day. I have had a deed made out to you for the property where he lives, that is, the cottage and the larger house, one hundred and forty-five feet on Columbia street and twelve rods on Missouri street. I shall build myself a house, for my own residence, on eighty-one feet and twelve rods back, on the east side of the lot, and a house for rent on the South street eighty-one feet front. The property is now renting for eight hundred dollars per year; the property that is deeded to you is worth about eight thousand five hundred dollars, and that I shall want a deed from you in a few days to Mrs. Gaylord's children and Mrs. Chadwick's. I shall send on a deed for you to sign in a few days. The property is now in your name, and I wish you would tell your wife how it is situated now, that she would know all about it if you should be taken away; and if I should, I want that property that is deeded to you to be made over to the four children, the rents and profits to be paid them yearly for their support, and when they become twenty-one years old to have the property in fee simple, to dispose of as they please." * *
"I think I have bought the White property very low. It cost him sixteen thousand dollars, and as property is all the

time advancing, it must bring that again; but I shall not sell it, as it is in a good location, and will let the children have it.

"Yours truly,

"N. B. Dodge.

"Do not let any one know but that you have paid for half the White property."

To this Joshua C. Dodge responded by the following letter:—

"Boston, April 18th, 1859.

"Father, Yours of the 9th was duly received and contents noticed. I have told Fanny all about the arrangements you proposed making in case I should be taken away, and she would follow the injunction of your letter to me, in that event.

"Yours truly,

"J. C. Dodge."

The "Fanny" mentioned in this letter was the wife of J. C. Dodge, and they have no children.

The appellee testified, that "the fact that any part of this property purchased from White had been conveyed to Joshua C. Dodge, was first communicated to her by somebody, along in the fall of the year after the purchase, until which time she had supposed the deed from White and wife, for all the property bought from White, had been executed to her husband. It was so conveyed without her knowledge or consent, and her husband never spoke to her of its having been so conveyed."

November 16th, 1860, a portion of the realty conveyed to Joshua C. Dodge was by him and his wife conveyed to the decedent, Nathan B. Dodge, for his life, remainder to appellant Martha A. Gaylord, for her life, remainder in fee to her children, Thomas F. and Harry C. Gaylord. The deed contains some limitations on the power of said Martha A., and provides for cross remainders between her children.

March 5th, 1862, Joshua C. Dodge and wife conveyed

the residue of this realty to the decedent for his life, remainder to Mary J. Chadwick for her life, remainder in fee to her children, Nathan R., Lewis A., and Ida Chadwick, with similar limitations and cross remainders. Lewis A. had died before the filing of the complaint.

After the execution of the deeds from White, the decedent made expensive improvements on the realty described in the complaint, received rents, and paid taxes and assessments of all kinds.

Joshua C. Dodge, whose deposition was read in evidence, testifies, that he is the son of decedent, Nathan B. Dodge, and is thirty-eight years of age; that up to 1857 he resided in Lafayette, and did business as a partner with his father; that he then removed to Boston, and has resided there since; that he and Martha A. Gaylord, Mary J. Chadwick, and Mrs. Granger are the children of the decedent by his first wife, and that Nathan B. Dodge, Jr., is the only child by the last wife—these being the sole heirs at law; that at the time of the conveyance to him from White, the condition of his father's children was as follows: Mrs. Gaylord was a widow with two children (the eldest being now seventeen years old), and without any means; Mrs. Chadwick had two children, a third (Ida) being born soon after, and was without means except the earnings of her husband as a clerk; Mrs. Granger's husband was in comfortable circumstances, and the witness had ample means of his own; the remaining child, Nathan B. Dodge, Jr., (now about fifteen years of age) was unprovided for; their conditions remained about the same, except as changed by these conveyances and his father's death; that witness paid no part of the consideration to White, and knew nothing of the purchase from him, until he received, in due course of mail, at Boston, a letter from his father, attached to his deposition, which letter he answered by mail, and the answer had been found at Lafayette, and this he also attached; that the deeds executed by himself and wife were prepared at Lafayette, and forwarded or brought to Boston by his father, and executed by himself and wife at the

date of the acknowledgments, and returned to his father; that for none of these deeds was any consideration paid to him; that the relation between the witness and his father had always been of the kindest and most confidential character; that before the purchase from White there was a verbal understanding between the witness and his father, that his father "should provide for my two sisters, Mrs. Gaylord and Mrs. Chadwick, and give them more property than he would give to his other children; there was also an understanding between us, that, in consideration of his so doing, I would give my sister, Mrs. Gaylord, two hundred dollars per year, during the life of my father;" that the witness had made this contribution, while his father lived.

Witness received a deed dated December 16th, 1861, for some other property, purchased and paid for by his father, and subsequently, on his father's request, executed a deed therefor, dated February 25th, 1864, to his father for life, remainder in fee to Nathan B. Dodge, Jr.

He further testified, that his father during his life had given some money to Mrs. Granger.

It further appears that the decedent in his lifetime conveyed a part of the real estate conveyed to him by White to his son Nathan B. Dodge, Jr., which, with that conveyed to the latter by Joshua C. Dodge, and the improvements made thereon by the decedent in his lifetime, equaled in value the advancement to either of the other children.

The decedent died intestate, and his personal estate, after the payment of all debts, &c., will amount to sixty thousand dollars. He was also seized at his death of the real estate conveyed to him by White, except that part thereof conveyed by him to his son Nathan B. Dodge, Jr.

ELLIOTT, J.—Tenancies in dower, having been abolished by statute, no longer exist in this State. The rights of a surviving wife in the real estate of her husband are those created by statute alone, and hence the question presented here must be determined by reference to the provisions of the statute on that subject.

These rights, so far as they are involved in this case, are defined by sections 17 and 27 of the statute of descents, which are as follows:

"Sec. 17.   If a husband die testate, or intestate, leaving a widow, one-third of his real estate shall descend to her in fee simple, free from all demands of creditors; *Provided, however,* That where the real estate exceeds in value ten thousand dollars, the widow shall have one-fourth only, and where the real estate exceeds twenty thousand dollars, one-fifth only as against creditors."

"Sec. 27.   A surviving wife is entitled, except as in section 17 excepted, to one-third of all the real estate of which her husband may have been seized in fee simple, at any time during the marriage, and in the conveyance of which she may not have joined, in due form of law; and also of all lands in which her husband had an equitable interest at the time of his death," &c.

There is no conflict between these sections when construed together.   Section 17 defines the rights of the widow as against creditors; whilst the 27th section recognizes the exception made in favor of creditors in section 17, and defines the rights of the surviving wife as against heirs and purchasers either from or through the husband in his lifetime, and defines the nature and character of the estates and interests held by her husband in which she is entitled to share.

In the case now before us, no question is presented as to creditors; and, hence, we must look to section 27 in determining the nature of the estate or interest that must have been held by the husband in the land, to entitle his surviving wife to a share therein.   That section declares that she is entitled to one-third of all the real estate of which her husband may have been seized *in fee simple,* at any time during the marriage, and in the conveyance of which she may not have joined, in due form of law; and also of all lands in which her husband had *an equitable interest at the time of his death.*

Here, the land in controversy was conveyed by White, not to the decedent, but to Joshua C. Dodge; but it is claimed by the appellee's counsel, that, by virtue of that conveyance, Nathan B. Dodge, the decedent, became seized in fee of the property. The argument in support of this proposition is, that the conveyance to Joshua C. Dodge was in trust; that his title was a nominal one merely; that the property was subject to the exclusive use, control, and *jus disponendi* of his father, Nathan B. Dodge; and that the 13th section of the act concerning trusts and powers (1 G. & H. 652) executed the use, and invested Nathan B. Dodge as *cestuy que use* with the fee simple.

The provision referred to reads as follows:—

"A conveyance or devise of lands to a trustee whose title is nominal only, and who has no power of disposition or management of such lands, is void as to the trustee, and shall be deemed a direct conveyance or devise to the beneficiary."

In this case the deed from White to Joshua C. Dodge is an absolute conveyance in fee. It contains no declaration of trust in favor of any one. And though the purchase money was paid by Nathan B. Dodge, and the conveyance was made by his direction to Joshua C. Dodge, without any consideration being paid therefor by the latter, still, under section 6 of the act just referred to, no use or trust resulted therefrom in favor of Nathan B. Dodge.

The 13th section of the act, copied above, clearly applies where the trust is expressly declared and the beneficiary named in the conveyance, the title of the trustee being nominal only. In that case the statute operates on the conveyance itself, and executes the use, by declaring the conveyance void as to the trustee and holding it to be a direct conveyance to the beneficiary; but it is difficult to see how it can apply so as to invest the legal estate in the beneficiary when the conveyance is absolute on its face and neither declares a trust nor names a beneficiary. But we

need not decide that question. As stated above, the payment of the purchase money by Nathan B. Dodge did not raise a resulting trust in his favor; and in the absence of a declaration of trust by Joshua C. Dodge, or an agreement by him to hold the land in trust, the conveyance by White to him would invest him with an absolute estate in fee simple. We must therefore look to the letter of Nathan B. to Joshua C. Dodge and the response of the latter thereto, to ascertain the nature of the trust created thereby as well as the beneficiaries.

It is insisted by the appellee, that the letters referred to show that Joshua C. Dodge held but a naked title to the property, whilst Nathan B. Dodge, Sr. was the beneficiary and entitled to its exclusive use, control, and disposition. We find nothing in the letters to warrant such a conclusion; nor do we see how it is possible to place such a construction upon them.

In his letter, Nathan B. Dodge, after describing the property purchased of White, and the terms of the purchase, says: "I have had a deed made out to you for the property where he" (White) "lives, that is, the cottage and the large house, 145 feet on Columbia street." * * * "The property that is deeded to you is worth about $8,500, and that I shall want a deed from you in a few days to *Mrs. Gaylord's children and Mrs. Chadwick's.* I shall send on a deed for you to sign in a few days. The property is now in your name, and I wish you would tell your wife how it is situated now, that she would know all about it if you should be taken away; and if I should, I want that property that is deeded to you *to be made over to the four children,* the rents and profits to be paid them yearly for their support, and when they become twenty-one years of age *to have the property in fee simple,* to dispose of as they please. I think I have bought the White property very low. It cost him sixteen thousand dollars, and as property is all the time advancing, it must bring that again; but I shall not sell it, as it is in a good location, and *will let the children have it.*" To this

Joshua C. Dodge responded, accepting the trust as declared in the letter to him.

There is certainly nothing in these letters creating a trust in favor of Nathan B. Dodge, the decedent, or conferring on him the right to the use, control, or disposition of the property. We think they did create a trust in favor of the children of Mrs. Gaylord and Mrs. Chadwick, which a court of equity would have enforced.

It is true, that Joshua C. Dodge did not execute the trust according to the terms of the agreement, but, at the request of the decedent, conveyed the property to him for life and then in separate parcels to Mrs. Gaylord and Mrs. Chadwick for life, with remainders to their children in fee. This variation, however, did not in any wise affect the rights of the appellee, and therefore affords to her no cause of complaint.

From the view thus taken of the case, we conclude that Nathan B. Dodge was not, at any time during the coverture, seized in fee simple of the premises in controversy, nor had he any equitable interest therein at the time of his death, and hence, that no interest therein descended from the decedent to the appellee, under the statute.

We think the evidence did not sustain the finding of the court, and for that reason a new trial should have been granted.

The judgment is reversed, with costs, and the cause remanded for a new trial, and for further proceedings in accordance with this opinion.

GREGORY, J., was absent.

*R. Jones, S. A. Huff, B. W. Langdon,* and *R. P. Ranney,* for appellants.

*J. A. Stein, W. C. Wilson,* and *Z. Baird,* for appellee.