*J. Buchanan,* for appellee.

————•————

Murphy and Others *v.* Henry and Others.

DESCENTS.—*Construction of Statute.— Widow.—Child.—Collateral Relatives.—* A., being seized of lands, died intestate, leaving B., his widow, and C., his only child, him surviving; afterwards, B. died, intestate, leaving said C., her only child, her surviving; afterwards, C. died, intestate, without issue, grandfather or grandmother, brother or sister, but with paternal and maternal uncles and aunts him surviving.

*Held,* that the widow, B., and C., the child of A., deceased, inherited, each one half, as tenants in common in fee simple, the lands of which A. died seized; that upon the death of B. (the widow of A. and mother of C.) C. inherited from B. immediately and directly, and not through her from A., the said one half of the lands descended to her from A.; that C. was thereupon seized in fee of the entirety of the lands, and at his death they descended, the one-half he had inherited of his father A. to the paternal uncles and aunts of C., and the one-half he had inherited from his mother B. to his maternal uncles and aunts.

SAME.—The doctrine of tracing back the title to a remote ancestor, the first purchaser, does not apply to our statute of descents. The rule is to trace the title back to the person last seized.

SAME.—The term "ancestor" as used in a statute of descents means any one from whom the estate is immediately inherited.

*Johnson* v. *Lybrook*, 16 Ind. 473, overruled.

APPEAL from the Martin Common Pleas.

BUSKIRK, J.—The appellants commenced in the court below a proceeding against the appellees for the partition of certain real estate.

The facts necessary to a proper understanding of the question involved are these: that Macon Henry, Sr., departed this life, intestate, and seized of the land in controversy; that he left to survive him his widow, Sarah Henry, and Macon Henry, Jr., who was his only child; that afterwards Sarah Henry departed this life, intestate, and left surviving her Macon Henry, Jr., who was her only child; that afterwards, Macon Henry, Jr., departed this life, intestate, and without issue, and seized of the entirety of said lands; that the said decedent, at the time of his death, had no grandfather or grandmother, and no brother or sister, or their descendants; that he left surviving him collateral relatives on both the paternal and maternal sides; that the plaintiffs were the maternal uncles and aunts of the decedent; and that the defendants were his paternal uncles and aunts and the descendants of such as were dead.

The prayer of the petition was, that the land should be equally divided between the paternal and maternal relatives. The appellees demurred to the petition, and the demurrer was sustained, and the appellants excepted. The appellants having refused to amend, final judgment was rendered for the appellees. The appellants assign for error the sustaining of the demurrer to the petition.

The question presented for our decision is one of great importance, and has received careful and mature consideration. The real question is, to whom the land in controversy descended upon the death of Macon Henry, Jr. The appellants claim that one-half of it goes to the relatives of

Mrs. Sarah Henry, the surviving wife of Macon Henry, Sr., and the mother of Macon Henry, Jr. The appellees insist that the whole of the land goes to the paternal relatives of Macon Henry, Jr. The solution of the question will depend upon the interpretation and construction to be given to our statute of descents.

It is agreed, by the parties, that Macon Henry, Sr., died intestate, seized in fee simple of the land in dispute; and that he left a surviving wife and one child, the decedent. The descent of this land is governed by our statute, and not by the common law. Section 23 of our statute of descents reads thus: "If a husband die intestate, leaving a widow and one child only, his real estate shall descend, one-half to his widow and one-half to his child." 1 G. & H. 295.

By other sections of the statute, the widow inherits from her husband one-third, one fourth, and one-fifth, the amount depending upon the number of children and the value of the estate. Macon Henry, Sr., while in life, was the absolute owner in fee simple of the entirety of the land; but our statute of descents, at the instant of his death, severs the estate and casts the inheritance, one-half on his widow and one-half on his only child. Subsequent to his death, the land was held by his widow and his son as tenants in common. It might have been divided, and then they would have held it in severalty. Upon the death of the widow, the first section of the statute of descents cast the descent upon the decedent, who was her only child, and he thereby became the absolute owner in fee simple of the entirety of the land. If he had been of sufficient age, he could, by will or deed, have passed a perfect and absolute title in fee simple. If he had died intestate, and with issue, it would have descended to his children. But he died in infancy, intestate, and without any kindred in either the ascending or descending line, but leaving collateral relatives on both the paternal and maternal sides. The question which we have to decide is, to whom did the land go upon the death of the decedent. The paternal relatives claim that, inasmuch as one-half of

the land descended immediately to the decedent from his father, and the other half remotely, but through his widow, descended from the father to the son, the entire estate, upon the death of the son, goes to them; and they refer to and rely upon the first clause of section 5 of the statute of descents. The clause referred to reads thus: "If the inheritance came to the intestate by gift, devise, or descent, from the paternal line, it shall go to the paternal grandfather and grandmother, as joint tenants, and to the survivor of them; if neither of them be living, it shall go to the uncles and aunts in the paternal line, and their descendants, if any of them be dead, and if no such relatives be living, it shall go to the next of kin in equal degree of consanguinity, among the paternal kindred; and if there be none of the paternal kindred entitled to take the inheritance as above prescribed, it shall go to the maternal kindred in the same order." 1 G. & H. 292.

The appellants claim that Sarah Henry became, by inheritance from her husband, the absolute owner in fee of the one-half of said land; and that upon her death, the decedent inherited directly from her one-half of said land; and that under the second clause of said section, the portion that the decedent inherited from his mother goes to them as the maternal relatives of the deceased.

The second clause of said section reads thus: "If the inheritance came to the intestate by gift, devise, or descent, from the maternal line, it shall go to the maternal kindred in the same order; and if there be none of the maternal kindred entitled to take the inheritance, it shall go to the paternal kindred in the same order."

The real questions presented for our decision are, did the decedent inherit the entire tract of land from his father? or did he inherit one-half from his father and the other half from his mother? The decision of these questions will depend upon the nature and character of the estate which Mrs. Henry inherited from her husband. If she held the property, thus inherited, in fee, and was the absolute owner

thereof, then the inheritance of one-half of the land came to the decedent by descent from her. If she had only a life estate in the lands of her husband, then such estate would terminate with her death, and the entire inheritance came to the decedent from his father. Whatever portion the decedent inherited from his mother, upon his death went to her kindred; and whatever he inherited from his father, upon the death of the decedent went to his father's kindred.

The common law canons of descent have been overturned in this State by our statute of descents, and in determining the nature and character of the estate which Mrs. Henry inherited from her husband, we must look to the language of the statute and the decisions of this court. Section 17 reads: "If a husband die testate, or intestate, leaving a widow, one-third of his real estate shall descend to her in fee simple, free from all demands of creditors," &c.

Section 27 reads thus: "A surviving wife is entitled, except as in section 17 excepted, to one-third of all the real estate of which her husband may have been seized in fee simple, at any time during the marriage, and in the conveyance of which she may not have joined, in due form of law; and also of all lands in which her husband had an equitable interest at the time of his death," &c.

The court has, in numerous cases, held, that a surviving wife holds in fee simple the lands which descend to her from her husband. We refer to the following cases in support of this position: *Philpot* v. *Webb*, 20 Ind. 509; *Newby* v. *Hinshaw*, 22 Ind. 334; *Smith* v. *Smith*, 23 Ind. 202; *McMakin* v. *Michaels*, 23 Ind. 462; *Goodrich* v. *Myers*, 25 Ind. 10; *Jackson* v. *Finch*, 27 Ind. 316; *Leard* v. *Leard*, 30 Ind. 171; *Gaylord* v. *Dodge*, 31 Ind. 41.

This court, in the case of *Smith* v. *Smith, supra*, say: "It is conceded in argument, as we understand, that on the death of the husband, the widow took one-third of the land in fee simple, and each of these parties also one-third. The statute, at any rate, establishes that proposition. 1 G. & H. 294, sec. 17. The question then is, who inherits the

widow's third upon her death, she leaving a child of her own (the appellee) and another child of the same father by his previous marriage (the appellant) surviving her.

"It seems to us clear that, in this case, the lands of the widow descend to her own child. Here the widow is the ancestor, and there is no fair construction of our statute of descents which will cast any portion of the estate upon those not of her blood. The sixth section of the act is relied upon, which is, that 'kindred of the half blood shall inherit equally with those of the whole blood; but if the estate shall have come to the intestate, by gift, devise, or descent, from any ancestor, those only who are of the blood of such ancestor shall inherit.' But the kindred spoken of in this section must be kindred of the person last seized; in this case, of the second wife."

This court, in the case of *McMakin* v. *Michaels, supra,* say : "A widow inherits in fee, subject only to such qualifications as are prescribed by the statute of descents. Sections 18 and 24 contain such qualifications, but aside from these we know of no other provision which in any way modifies the rule of descent, that the real and personal property of any person dying intestate shall descend to his or her children in equal proportions."

The proviso to section 24 is in these words: "Provided, that if a man marry a second or other subsequent wife, and has by her no children, but has children alive by a previous wife, the land, which at his death descends to such wife, shall at her death descend to his children." See *Dean* v. *Lyon,* 8 Ind. 71; *Martindale* v. *Martindale,* 10 Ind. 566; *Ogle* v. *Stoops,* 11 Ind. 380.

This court, in the case of *Goodrich* v. *Myers, supra,* say: "It was held by this court, in the case of *Philpot* v. *Webb,* 20 Ind. 509, that one-third of the real estate of her first husband, W., descended to the widow in fee; that her subsequent marriage did not divest it; and that at her death it descended to her heirs, and was liable to be sold for debts contracted by her. If this is good law it settles the case

in judgment; for if the 18th section is a rule of descent, and not a limitation of the estate of the widow in the lands of her deceased husband, then it follows that the children of Myers had no vested interest in the portion of their mother, in the lands of which their father died seized. All the interest they can have must come to them as heirs of the mother."

This court, in the case of *Gaylord* v. *Dodge, supra*, say: "Tenancies in dower, having been abolished by statute, no longer exist in this State. The rights of a surviving wife in the real estate of her husband are those created by statute alone, and hence the question presented here must be determined by reference to the provisions of the statute on that subject."

The above sections of our statute of descents and decisions of this court conclusively demonstrate that the surviving wife of Macon Henry, Sr., was the absolute owner in fee simple of one-half of the lands of which her husband died seized; that she possessed the power to devise or convey the same, and could have thereby passed a perfect and absolute title in fee; that it was subject to sale for the payment of her debts; that upon her death it descended to her son, the decedent.

The second clause of section 5 is, "If the inheritance came to the intestate by gift, devise, or descent, from the maternal line, it shall go to the maternal kindred in the same order."

Did one-half of the land in controversy come to the intestate by descent from his mother? The father of the intestate was seized in fee of the lands up to his death. The statute of descents, upon his death, cast the descent upon his widow and child. We have shown that a fee simple title was vested in her by our statute. The intestate could not inherit the one-half from his father, for he had been divested of all title. Then he must have inherited it from his mother, in whom the fee had vested and remained vested until her death, when the statute cast the descent from her to him. The language of the statute is, "if the inheritance

came to the intestate from the maternal line," and not through the maternal line, as has been earnestly argued.

It has been insisted, in argument, that as the father was the first purchaser, the title can be traced back from the intestate, through his mother, to his father; and in support of this position the case of *Johnson* v. *Lybrook*, 16 Ind. 473, has been pressed upon our consideration. We have ex-- amined that case with great care. The facts upon which the·ruling in that case was made are these: "That William Free-man died in 1857, seized of certain lands, and left to survive him Ann Freeman, his widow and heir, and Julia and Susan Freeman, his children by his said wife; that in 1859, Julia. died intestate, and without issue; that afterwards, in the same year, Ann, the widow, died intestate; that afterwards in the same year, Susan died intestate and without issue, imme--diate or remote, and leaving no brothers or sisters, nor grandparents on either the paternal or maternal side; but leaving uncles and aunts on both the paternal and maternal side." Upon the above facts, this court held that the estate went to the paternal relatives; and after quoting the fifth section of our statute of descents, the court say: " It appears to have been the intention of the framers of our statute of descents, that when a decedent leaves no heirs in the descend--ing line capable of inheriting, and the property has to be·distributed to collaterals in the ascending line, those who·are of the blood of the first purchaser shall be preferred, in the instances named in the statute. It is·important, then, to determine in what character, and by what right, Ann, the widow, was entitled to a part of said lands. By the 17th and' and 24th sections of said statute, the portion that she is so·entitled to is spoken of as that which descends to her from·her husband. Incidentally, it has been by this court recog--nized as the proper construction of the statute in question: (13 Ind. 508), that she takes as heir. If she received, then, by descent, and not because of any marital rights which might be supposed to exist, separate from such right of

descent, the title could be traced back through her to the paternal line of the immediate decedent."

The above case is analogous to the one under consideration, and if the decision there made is adhered to, it is decisive of this case. In our judgment, the above decision cannot be sustained, either on principle or by authority. When that decision was made, it was generally supposed that a surviving wife took but a life estate in the lands of her husband. The doctrine of tracing back the title to a remote ancestor does not apply to our statute of descents. In determining from whom an estate came, the rule is, to trace the title back to the person last seized. It is the immediate, and not the remote, ancestor from whom the descent comes. This court, in the case of *Smith* v. *Smith, supra,* in speaking of the descent of lands, that the widow had inherited from her husband, to her child, held that the widow was the ancestor, and that no fair construction of our statute of descents would cast any portion of the estate upon those who were not of her blood. This decision is abundantly supported by authority.

Washburn, in his work on Real Property, vol. 3, p. 18, sec. 39, says: "The term 'ancestor,' as used in a statute of descents, means any one from whom the estate is inherited. In this sense, an infant brother may be ancestor of an adult brother, the former having died, and his estate having come to the latter as his heir."

The Supreme Court of Ohio, in the case of *Lessee of Prickett* v. *Parker,* 3 Ohio St. 394, say: "It thus appears that the ancestor meant by our statute is any one from whom the estate is inheritable, and that the ancestor from whom it must, in law, be understood to 'have come to the intestate,' is he from whom it was immediately inherited."

Judge STORY, in delivering the opinion of the Supreme Court, in the case of *Gardner* v. *Collins,* 2 Pet. 58, says: "As to descents, as well as gifts and devises from a parent, it is plain that the act looks only to the immediate descent or title. A descent from a parent to a child cannot be con-

strued to mean a descent through, and not from, a parent. So a gift or devise from a parent must be construed to mean a gift or devise by the act of that parent, and not by that of some other ancestor more remote passing through the parent."

The same learned judge, on page 91, says: "It is true that, in a sense, an estate may be said to come by descent from a remote ancestor to a person upon whom it has devolved through many intermediate descents. But this, if not loose language, is not that sense which is ordinarily annexed to the term. When an estate is said to have descended from A. to B., the natural and obvious meaning of the words is, that it is an immediate descent from A. to B. If other words of a statute should seem to require another and more enlarged meaning, there would be no absolute impropriety in adopting it; but if the true sense is to be sought from the very terms *per se*, that which is the usual sense would seem most proper to be followed. It is not for courts of justice to indulge in any latitude of construction where the words do not naturally justify it, and there is no express legislative intent to guide them."

The above authorities are directly in point, and are entitled to great weight and consideration. They establish the proposition that the title cannot be traced back from the intestate through his mother to his father. It is our duty to construe our statute to mean an immediate and not a remote descent, an immediate and not a remote inheritance. The descent must be not only immediate, but direct, and not remote and intermediate. The plain reading of our statute, the decisions of this court, and the authorities above quoted, conclusively demonstrate that the ruling in the case of *Johnson* v. *Lybrook*, *supra*, is not correct. That decision has been overruled in principle by the previous decisions of this court, and we now, in express terms, overrule it.

Our statute of descents severed the estate upon the death of Macon Henry, Sr., and cast the descent of one-half of it on the intestate, and the other half upon his widow, who

became the absolute owner in fee, and upon her death it descended directly and immediately from her to the intestate. We hold that the intestate inherited one-half of the lands in controversy from his father, and the other half from his mother; and that upon his death one-half of the same went to his paternal relatives, and the other half to his maternal relatives. The court erred in sustaining the demurrer to the petition.

The judgment is reversed, with costs, and the cause is remanded, with directions to the court below to overrule the demurrer, and for further proceedings not inconsistent with this opinion.

*S. W. Short,* for appellants.

*C. S. Dobbins* and *C. H. McCarty,* for appellees.