*A. S. White* and *R. A. Lockwood*, for the defendant.

---

## CLARK and Others *v.* SPRAGUE and Others.

A person died intestate leaving personal and real estate (not derived by purchase with the estate of or by descent from his father or mother,) without issue, and without father or mother or wife living. *Held*, that by the statute of 1831, the intestate's brothers and sisters of the half-blood and their descendants, were entitled to share with his brothers and sisters of the whole blood and their descendants, in the inheritance of the real and distribution of the personal estate of the deceased.

ERROR to the *Madison* Circuit Court.

SULLIVAN, J.—The complainants, in this case, filed their bill in chancery to obtain a partition of the real estate, and their distributive share of the personal estate, of *Damon G. Noble*, deceased, who died intestate. The bill states that *Noble* died possessed of a large real and personal estate without issue, and without father or mother or wife, him surviving; that the complainants are the brothers and sisters of the half-blood and their descendants of the deceased, and the defendants are the brothers and sisters of the whole blood of the deceased, and their descendants. The administrators of the deceased are also made defendants to the bill. The prayer of the bill is, that the complainants be admitted to

share in the partition of the real estate, and in the distribution

of the personal estate of the deceased. The defendants demurred to the bill, assigning for cause of demurrer that the complainants were of the half-blood only of the deceased, and that the defendants were of the whole blood. The Circuit Court sustained the demurrer and dismissed the bill at the costs of the complainants.

The question before us is, whether by the act of 1831, which was the act in force at the time of the death of *Damon G. Noble*, the brothers and sisters of the half-blood of *D. G. Noble* are entitled to share with his brothers and sisters of the whole blood, in the inheritance of the real and distribution of the personal estate of the deceased?

By the common law that question, so far as it regards the inheritance of real estate, was settled in favour of the whole blood, but as it was settled on reasons peculiar to the policy of the age, it may well be questioned whether those reasons are entitled to any weight whatever in the construction to be given to our statute. It may not be useless, however, to notice the common law rules of descent which especially apply to this question, together with the reasons for their adoption.

The first necessary to be noticed, but which is the fifth canon as arranged by *Blackstone*, is, that on failure of lineal descendants, or issue, of the person last seised, the inheritance shall descend to his collateral relations being of the *blood* of the first purchaser. Under this rule, when feuds were first established the collateral relations of the feudatory, if he died without issue, could not inherit, because it was said that what was given to a man for his personal services and merit, ought not to descend to any but the heirs of his person. It was, therefore, made a necessary qualification of the heir, when feuds began to be hereditary, that he should be lineally descended from the first feudatory or purchaser. In process of time, however, it was discovered that it would be extremely difficult, in many cases, for the heir to prove his relationship to the first purchaser through a long line of ancestors, however readily it might be shown to the person last seised; therefore, a rule of evidence " calculated to investigate who the purchasing ancestor was," was adopted as follows,— that the collateral heir of the person last seised, must be his

next collateral kinsman of the *whole* blood. This latter rule was founded on the supposition, that a kinsman of the whole blood must of necessity have a common ancestor with the person last seised, but as to a kinsman of the half-blood, there was not the same probability that he was derived from the first purchaser.·

It is apparent from the foregoing rules, that the reason why kinsmen of the half-blood are excluded by the common law is, not that they are not of the blood of the person last seised, but that they may not be of the blood of the first purchaser.

Our statute of descents and distribution, as is well known, makes no reference to the first purchaser. That statute, or so much of it *as is* applicable to the present case, is as follows, viz. That the real and personal estate of any person dying intestate, shall descend to his or her children or their descendants in equal parts, that is, to the children of a deceased child, the share of their deceased parent: if there be no children, nor their descendants, then to the father; and if there be no father, then in equal parts to the mother, brothers, and sisters, of such deceased person dying intestate, and to their descendants. R. C. 1831, p. 207.

In construing this statute, we are trammeled by no artificial rules. The only question is, whether the terms "brothers and sisters" necessarily exclude brothers and sisters of the half-blood. It is manifest that there is not in the statute any legislative intention expressed to exclude the half-blood. If it is excluded then, it is upon general principles of law, not from any positive enactment.

According to the uniform construction which the *English* statute of distributions has received, especially since the decision of the case of *Crooke* v. *Watt*, 2 Vern. 124, a brother of the half-blood is a brother within the meaning of the law. That statute directs that the personal estate of an intestate, under certain circumstances, shall be distributed among the next of kin in equal degree. When the next of kin are brothers and sisters, no distinction is made between those of the whole and half-blood. Being related to the intestate by blood, the half-blood as well as the whole blood are within the degree mentioned in the statute. And in *Tracy* v. *Smith*, 2 Lev. 173, it is said that a brother of the half-blood

is a " brother " as well as a brother of the whole blood. The construction given to that statute shows that, except where an artificial rule of evidence has been introduced for a special purpose, the word brother does by law mean as well a brother of the half as of the whole blood. Following that construction, and applying the same rules to the construction of our statute, we think the right of the complainants to participate in the distribution of the personal estate of their deceased brother, is clearly established.

And so we think they are also entitled to a partition of the real estate of the deceased. It is observable that by the terms of the statute above-cited, the real and personal estate of persons dying intestate go together, that is, whoever is entitled by law to the personal is also entitled to the real estate. The statute makes no distinction between the persons who shall inherit the one or succeed to the other, nor is any qualification prescribed or exception made in either case.

In deciding the question before us, we are aided by a few decisions which have been made in the Courts of our own country. In the case of *Gardner* v. *Collins*, 3 Mason, 398, a statute of the state of *Rhode Island*, which, except that it is exclusively a statute of descents, is in almost all other respects similar to our statute of 1831, came under consideration. The terms of that statute are, " when any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass in equal portions to his or her kindred in the following course: to his or her children, or their descendants, if any there be; if there be no children nor their descendants, then to the father of such intestate; if there be no father, then to the mother, brothers, and sisters of such intestate, and their descendants, or such of them as there be," &c. The action was ejectment, and was brought to recover an estate which the plaintiff claimed as a brother of the intestate of the half-blood, and the defendants claimed the same as heirs of the whole blood. Judge *Story*, in commenting upon the fourth paragraph of the statute above noticed, said, " The question is, whether brothers and sisters of the half-blood are not within the purview of this clause." " Unless the Court can say that brothers and sisters of the half-blood, are not brothers and sisters in the general sense of

the law, it is impossible to doubt the title in this case. The statement of the proposition carries its own answer. Brothers and sisters of the half-blood are recognized by law as of kin in the degree of brothers and sisters, and as the act contains no qualification as to whole or half-blood, the words must be taken in their common and usual sense." The same case was afterwards taken to the Supreme Court of the *United States*, where the plaintiff had judgment. 2 Pet. R. 58.

In the case of *Sheffield* v. *Lovering*, 12 Mass. 490, the same determination was made. By a statute of *Massachusetts* for the settlement and distribution of intestates' estates, it was enacted that the real estate of the intestate, when he shall leave no issue, shall descend to his father; if no issue nor father, it shall descend in equal shares to his mother, if any, and to his brothers and sisters; if no issue, father, brother, nor sister, it shall descend to his mother if any; but if no mother then to his next of kin in equal degree. The plaintiff demanded one-fifth of the estate of which the intestate, *Mary Marsh*, died seised, and the question before the Court was, whether a brother or sister of the half-blood could claim as heir to *Mary Marsh*, or whether the whole of her estate descended to her mother? The Court admit that this could not be made a question at the common law, but say that the rules governing the descent and distribution of real and personal estate, have generally been alike in their Courts, depending wholly on the statutes of that commonwealth. The judicial construction of the *English* statute of distribution was adopted by the Court, and judgment given for the demandant.

From the terms of our statute, therefore, as well as from the construction given by other Courts to statutes of similar import, we are of opinion that brothers and sisters of the half-blood are not excluded by the act of 1831, but that the words "brothers and sisters" include as well brothers and sisters of the half as of the whole blood (1).

It may be proper to remark, that the property involved in this controversy, as we are left to infer, was not derived by purchase with the estate of, or by descent from, the father or mother of the intestate. No question therefore arises on the third and fourth sections of the statute.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

*W. Quarles, C. Fletcher,* and *O. Butler,* for the plaintiffs.
*P. Sweetser,* for the defendants.

(1) The following alterations, among others, have been made in the course of descents, in *England,* by the stat. 3 & 4 Will. 4, viz. 1. The admission of ancestors in the right line of ascent; 2. The abolition of the exclusion of the half-blood; 3. The abolition of the rule, that the heir to whom land is devised is in by descent. 2 Wood. Lect., Will. Ed., 150, note *b.*

Vide *Indiana* statutes of 1838 and 1843, on the subject of descents, in which there are provisions in favour of the half-blood.