Cox and Others *v.* MATTHEWS and Another.

*A.* died intestate, in the year 1835, seized of certain real estate, leaving an only child, *B.*, and his widow, surviving him. In the following year *B.* died intestate, leaving no issue, and without brothers and sisters, or their descendants, alive, but leaving uncles and aunts, who were all brothers and

sisters of the half blood of her father. The father of *A.* was married twice, having by his first marriage two children, *C.* and *D.*, and by his second marriage one child, the said *A.;* he then died himself, and his widow married again and had two children, *E.* and *F.* The said *C* , *D.*, *E.* and *F*, the uncles and aunts of *B.*, of the half blood of her father, were living at the time of her decease. After the death of *B.*, her mother married again, and had issue. Suit by *E.* and *F.* against the vendees of *C.* and *D.* to recover one half of the land. On the trial, the defendants offered in evidence the record of a suit in chancery, brought by *C.* and *D.* against *E.* and *F*, and others, to obtain distribution of the personal estate of *A* , and also to obtain a decree that the complainants were entitled to the lands left by *B.*, to the exclusion of *E.* and *F.*, and for partition, &c.   The bill was filed in the office of the clerk of the Circuit Court, in *December*, 1839, and notice thereof given by the petitioners by publication in a news-paper.   The suit was called in the notice, after entitling the cause, "Bill of partition of real estate," and notified the defendants that the peti-tioners had filed their petition for partition, according to law, among those entitled, of the real estate of which *B.* died seized, &c.   The notice was signed by the petitioners, and, together with an affidavit of its publication for four weeks, &c., was filed in Court, and the record recites that "it appearing to the satisfaction of the Court that *said publication* was made," &c., "*thereupon*, on motion, the defendants were defaulted," &c.   It was therefore ordered and decreed that *C.* and *D.* were the heirs of *B.*, and that the title of said lands be vested in them.

*Held*, that on the death of *B.* the land descended to the brothers and sisters of her father; and that they were of the half blood, only, could make no difference; nor could the fact that *E.* and *F.* were half brothers of *A.* through the maternal line make any difference as to their rights, as they were equally related to *B.* with the said *C.* and *D.*

*Held*, also, that the doctrine of shifting descents never prevailed in this State, but where the descent is cast, and the estate vested in him who is the heir at the death of the ancestor, the estate can not be divested by the subsequent birth of nearer heirs; and hence, the half brothers and sisters of *B.*, born after her decease, not being *in ventre sa mere*, could not take the estate from the uncles and aunts of *B.*, in whom it had vested.

*Held*, also, that the bill in chancery, the record of which was offered in evidence, did not make such a case as was contemplated by the act of 1838, concerning the partition of lands (R. S. 1838, p. 426,); that act contemplating cases where the rights of the defendants in the estate were not controverted, and the. bill referred to making a case in which the rights of the defendants in the land were controverted and denied ; and hence, the notice provided for in that act, which was the only notice given of the chancery suit, was not sufficient.

*Held*, also, that the notice was not sufficient to give a court of chancery

jurisdiction of the persons of the defendants, under R. S. 1838, p. 444, not being issued and signed by the clerk as an official act; that the defendants, had it come to their notice, might have treated it as a nullity, and hence, the Court did not acquire jurisdiction of the persons of the defendants.

*Held,* also, that as the record offered sets out the notice, and the proof of its publication, and shows precisely upon what the Court acted in assuming jurisdiction of the case, and as that notice was insufficient and void, so the decree rendered thereon was void, and the record thereof was properly rejected as evidence.

*Held,* also, that the record was not admissible as constituting an estoppel *in pais,* as the vendees of *C.* and *D.* must be presumed to have known that the decree against *E.* and *F.* was void.

The Court instructed the jury "that to constitute an equitable estoppel, it must be shown that the plaintiffs were apprized of each sale to innocent vendees before it was made, so that they might have had an opportunity to inform the purchaser of their interest in the property."

*Held,* that the instruction was well enough, as its evident meaning was, that the plaintiffs must have been apprized of the intended sales.

APPEAL from the *Tippecanoe* Circuit Court.

WORDEN, J.—This was an action by the appellees, *Matthews* and *Tufts,* against the appellants, for the recovery of the possession of certain real estate, described in the complaint. Trial by jury; verdict and judgment for plaintiffs, for an undivided half of the estate described. The defendants appeal, and ask a reversal on grounds that will be noticed.

The facts are, in brief, that in 1835, one *Samuel Hall* died intestate, seized of the land in controversy, leaving a widow and a daughter, *Lucy Hall.* Upon the death of *Samuel Hall* the land descended to his daughter *Lucy,* subject only to the widow's dower. In 1836 *Lucy,* being then an infant, also died without issue, and without brothers or sisters, or their descendants. She left, however, uncles and aunts, as follows: *John Matthews* and *Hannah Tufts,* formerly *Hannah Matthews,* who were the plaintiffs in this suit, and also *Gordias A. Hall* and *Ruth Wetherell,* formerly *Ruth Hall.* The father of *Samuel Hall* had issue by his first wife, the said *Gordias* and *Ruth.* His wife dying, he married again, and had issue by his second wife, the said *Samuel,* and himself died. His widow, the mother of *Samuel,* married a *Matthews,* and had issue, the said *John* and *Hannah.* All of the persons

**Nov. Term, 1861.**

Cox
v.
MATTHEWS.

Tuesday,
December 10.

Nov. Term, named, it will be seen, were brothers and sisters of the half
1861.   blood to *Samuel Hall.*

Cox         Upon the death of *Lucy Hall,* the land descended to the
v.      brothers and sisters of her father.  R. S. 1831, § 3, p. 208.
Matthews. That they were only brothers and sisters of the half blood,
can make no difference.  *Clark* v. *Sprague,* 5 Blackf. 412.
Nor can it make any difference that *John* and *Hannah* were
half brother and sister through the maternal line.  They were
equally related to *Samuel Hall,* with *Gordias* and *Ruth,*
and inherit equally with them the estate.

The defendants in this suit claim the land under convey-
ances made by said *Gordias Hall,* and *Ruth Wetherell* and
her husband, who attempted to convey the entire estate,
claiming to own the same to the exclusion of said *John* and
*Hannah.*  We have seen that the estate descended equally
to all the half brothers and sisters of *Samuel Hall;* and
the plaintiffs were entitled to recover the one half thereof,
unless something has transpired to defeat their right.

A point arises in the case, which was ably discussed in
another case, now dismissed, by the counsel herein, and
which may be noticed.  We now notice the point, because
if there is an outstanding title to the premises in some one
else, the plaintiffs can not recover.

It appears that after the death of *Lucy Hall,* her mother
married again, and had issue, three children, born in 1838, 1843
and 1846.  These children were half brother and sisters to
*Lucy.*  Had she died leaving such half brother and sisters, the
estate would have gone to them, instead of the half brothers
and sisters of her father.  The estate having vested in the half
brothers and sisters of *Samuel Hall,* upon the death of *Lucy,*
the question arises whether it was *divested* by the subse-
quent birth of kindred of nearer blood to *Lucy.*  If so, the
title is in them, and the plaintiffs have no right to recover.

The common law rule is thus stated in 2 Greenleaf's
Cruise on Real Property, p. 145:

"It has been stated to be a rule of law, that the freehold
shall never, if possible, be in abeyance.  It is therefore
settled that lands shall always descend to the person who is
heir at the time of the death of the ancestor; but *such*

*descent may be defeated by the subsequent birth of a nearer heir.*" §11. This author gives several instances of the application of this rule, among which are:

"If a man has issue, a son and a daughter, and the son purchases lands in fee, and dies without issue, the daughter shall inherit the land from him. But if afterward the father has issue, a son, this son shall enter into the land, as heir to his brother, and oust his sister."

"So where a son purchased land, and died without issue, his uncle entered as his heir; two years after the father had issue, another son, and it was held such other son might enter on his uncle." *Id.* §14. To the same effect, see 1 Coke, 10, b; 2 Wen. Blackstone, 208, note 9; 2 Bac. Abr. 296, A.

This principle may have been acted upon in some of the other States of the *Union*, as a part of the common law, but we are of opinion that in this State, the doctrine of shifting descents never prevailed. Here, undoubtedly, a child *in ventre sa mere* is considered as *in esse*, for the purposes of inheriting; but when the descent is cast, and the estate vested in him who is heir at the death of the ancestor, the estate can not be divested by the subsequent birth of nearer heirs. The feudal policy of tieing up estates in the hands of a landed aristocracy, and which had much to do with the doctrine of shifting descents, as recognized by the *English* canons of descent, is contrary to the spirit of our laws, and the genius of our institutions. It has been the policy in this State, and in this country generally, not only to let estates descend to heirs equally, without reference to sex or primogeniture, but also to make titles secure and safe to those who may purchase from heirs upon whom the descent may be cast. Our laws have defined and determined who shall inherit estates upon the death of a person seized of lands. When those thus inheriting make conveyances, the purchasers have a right to rely upon the title thus acquired. If titles thus acquired could be defeated by the birth of nearer heirs, perhaps years afterward, great injustice might, in many cases, be done, and utter confusion and uncertainty would prevail in reference to titles thus acquired. We are of opinion that the doctrine of shifting descents does not

Nov. Term,
1861.

Cox
v.
MATTHEWS.

prevail under our laws, any more that the other *English* rule that kinsmen of the whole blood, only, can inherit. See *Clark* v. *Sprague*, *supra*. It follows, that there is no outstanding title in the half brother and sisters of *Lucy Hall*, above mentioned.

We now proceed to the other questions in the case. On the trial below, the defendants offered in evidence the record of a suit in chancery in the *Tippecanoe* Circuit Court, which was rejected. The record was offered as an absolute bar to the action; but should the Court be of opinion that it was not a bar, then it was offered, in connection with the other evidence, as an estoppel *in pais*.

The rejection of the record constitutes the principal question in the cause.

The suit, of which the record was offered in evidence, was brought by *Gordias A. Hall*, *John Wetherell* and *Ruth* his wife, against *John Matthews* and *Hannah Tufts*, the plaintiffs herein, also the husband of said *Hannah*, and *William Farmer*, administrator *de bonis non* of the estate of *Samuel Hall* deceased, and also *Samuel A. Huff* and *Miriam* his wife, who was the widow of *Samuel Hall* deceased.

It seems that *Huff* and wife claimed the property left by *Hall* deceased, and the object of the bill was to obtain distribution of the personal estate to the complainants therein, and also to obtain a decree that they, the said *Gordias* and *Ruth*, were entitled to the land as the heirs of said *Lucy*, to the exclusion of said *Matthews* and *Hannah Tufts*, and for partition thereof. The bill sets out the relationship of said *Matthews* and *Hannah Tufts* to *Lucy Hall*, and makes them parties; but it does not admit that they had any interest in the land or personal property. On the contrary, the said *Gordias* and *Ruth* claimed the property, in their bill, to the exclusion of every one else, except the right of the widow to dower. The following passages from the bill will serve to show its true character, as setting up a claim to the land adverse to the rights of the plaintiffs in this suit. It alleges that *Lucy Hall* died, "*leaving as her heirs at law* your petitioners, the said *Gordias A. Hall* and the said

*Ruth Wetherell,*" &c. "Your petitioners pray that the said

*Danforth Keys Tufts* and *Hannah Tufts* his wife, and the said *John Malthews* may be made defendants to this, their petition, and that the Court will determine and ascertain their right or rights, if any, to any part of said personal or real estate. And your petitioners, *Gordias A. Hall* and *Ruth Wetherell*, aver that they are the uncle and aunt of the said *Lucy* upon the part of her father, said *Samuel Hall*, and that they are entitled to said personal and real estate, saving the said widow's dower during her life, *as the sole heirs* of the said *Lucy*, infant, or as representing the said *Samuel Hall*." There is a prayer, among other things, that "commissioners may be appointed, according to law, to make partition of the real estate according to law and the rights of the parties."

The bill was filed in the office of the clerk of the *Tippecanoe* Circuit Court, on *December* 21, 1839. Thereupon, the following notice was issued:

"STATE OF INDIANA,   } Circuit Court of *Tippecanoe* Coun-
"TIPPECANOE Co., SCT., }   ty, of *February* term, 1840.

*Gordias A. Hall, John Wetherell* and *Ruth Wetherell his wife* v. *William Farmer*, administrator *de bonis non* of *Samuel Hall* deceased, administrator of *John D. Farmer* deceased, *Samuel A. Huff* and *Miriam* his wife, *John Matthews*, and *Danforth Keys Tufts* and *Hannah* his wife.

"*Bill of Partition of Real Estate.*

"The said defendants, *Samuel A. Huff* and *Miriam* his wife, *John Matthews, Danforth Keys Tufts* and *Hannah* his wife, are hereby notified that the said *Gordias A. Hall, John Wetherell* and *Ruth* his wife, have filed their petition in the Circuit Court of *Tippecanoe* county, *Indiana*, for partition, according to law, among those entitled, of the real estate of which *Lucy Hall*, late of said county, heir at law of said *Samuel Hall*, died seized and possessed; said real estate lying and being in said county, and particularly described in the petition aforesaid; and that said petition prays an allotment of dower in said real estate to the said *Miriam Huff*, and that the application for said partition will be made

Nov. Term, 1861.

Cox
v.
Matthews.

on the first or some other day of the next succeeding term of said Court, to wit: the *February* term thereof, of the year 1840.        " Gordias A. Hall,

" John Wetherell,    } *Petitioners.*

" Ruth Wetherell,

" *December* 31, 1839."

At the *February* term of the Court, 1843, the foregoing notice was filed, together with an affidavit showing its publication. The record recites, that " it appearing to the satisfaction of the Court that *said publication* was made for four successive weeks in a public newspaper, said last publication being more than sixty days before the first day of the present term of this Court, as will more fully appear by said affidavit; and *thereupon*, on motion, said *Danforth Keys Tufs, Hannah Tufts* his wife, and *John Matthews* are three times called and come not, nor say any thing in answer to said bill, but leave the complaints therein wholly undefended. It is therefore considered," &c. On the default thus taken, among other things, it was " finally ordered, adjudged and decreed that said complainants, *Gordias A. Hall* and *Ruth Wetherell* are the heirs at law of said *Lucy Hall*, daughter of said *Samuel*, and that the title of said real estate above fully described, of which said *Lucy Hall* died seized, is hereby decreed to be vested in said complainants, *Gordias A. Hall* and *Ruth Wetherell*, in fee, subject to the right of dower of said *Miriam Huff* in said lands."

Passing by any question as to the power of a court of equity to determine who are, and who are not, heirs to an estate, as matter of law, there being no controversy as to the facts, we proceed to inquire whether the Court had acquired jurisdiction of the persons of said *Matthews* and *Tufs*, so as to be authorized to render a decree against them excluding them from their inheritance. If not, the decree, as against them, is a nullity. *Babbitt* v. *Doe*, 4 Ind. 355.

The statute on the subject of the partition of real estate in force at the time the proceedings were had (R. S. 1838, p. 426), provides " that when two or more persons are proprietors of any real estate, any of whom are desirous of

having the same divided, it shall and may be lawful for the Circuit Court of the county where such real estate may be situated, on the application of any such person, (notice of such application having been previously given by the party so applying, for at least four weeks, in some public newspaper in this state) to appoint three disinterested freeholders, residents of said county, not related to either of the parties, as commissioners for dividing the said estate," &c. Were the bill in question to be deemed as governed by the provisions of this act, the notice would probably be sufficient. But we are of opinion that the bill filed did not make such a case, nor seek such remedy, as is contemplated by the act above cited, and hence that the notice given, as in that act is provided for, is not sufficient. The act in question contemplates cases where the respective rights of the defendants, in the estate to be partitioned, are not controverted. On a default, in proceedings under the act in question, it was necessary for the plaintiff, not only to show title in himself, but also to show that the defendants *were common proprietors with him* of the land, to justify the appointment of commissioners. *Lease* v. *Carr*, 5 Blackf. 353; *Shaw* v. *Parker*, 6 *id.* 345.

The notice provided for in the act under consideration, applies as well to residents as to non-residents of the State. The notice was intended, of course, to be seen by the defendants. Upon seeing such notice published in the paper, the defendants to the petition for partition would be in no manner advised that by the petition it was sought to exclude them from their interests in the land. They would have a right to presume, under the law, that if they made default, no proceedings could be had on the petition to dispute their joint ownership with the petitioners. Knowing that under such petition their joint ownership could not be controverted, they might well make default, trusting to the fairness of the division that might be made by the commissioners to be appointed.

The same act provided that courts of equity should have concurrent jurisdiction with courts of law in cases of partition.

Was the notice sufficient to give a court of equity jurisdiction of the persons of *Matthews* and *Tufts?* This question must be answered by a reference to the statute providing how notice should be given. It was provided that "whenever it should be made satisfactorily to appear, by the affidavit of some disinterested person, filed during the vacation of the court in the clerk's office of the proper county, that any defendant, or defendants, to any bill in chancery, or to any petition or libel for divorce, filed in the clerk's office aforesaid, is not a resident of this State, it shall be the duty of the clerk aforesaid forthwith to make publication for three successive weeks, in some public newspaper printed weekly in the county where the said bill, petition or libel may be filed; and if there be no such newspaper printed in said county, then in the nearest weekly newspaper printed in some other county, setting forth the filing of such affidavit, and notifying said defendant, or defendants, to such bill, libel, or petition, and that unless such defendant, or defendants, plead, answer or demur to the same, on or before the calling of the cause at the next ensuing term of the said court, the bill, as to such defendant, or defendants, will be taken as confessed." R. S. 1838, p. 444. The notice in question was published in vacation, and without any previous order of the Court, and it seems to lack nearly all the essentials required by the statute. It does not state the filing of the affidavit as required, nor does it notify the defendants that the bill would be taken as confessed unless they should plead, answer, or demur thereto; nor was it given *by the clerk*, as required by the statute. Whatever might be the effect of the other defects in the notice, we think it clear that it should have been given by the clerk, and purport to be an official act, in order to have any efficacy. The notice was given and signed only by the plaintiffs in the bill, and the defendants thereto, had it come to their knowledge, might disregard it, and treat it as a nullity. As well might a summons, or a subpoena in chancery, be issued by a party instead of the clerk. The law requires the one, as well as the other, to be the act of the clerk, and not of the party. The Court did not,

in our opinion, acquire jurisdiction by the publication of the notice in question.

But it is insisted that as the Court found that due publication had been made, that finding is conclusive, and that we can not look to the publication as set out. The Court, however, did not find that due publication had been made. The record sets out the notice, and proof of its publication, and that it appeared "to the satisfaction of the Court that *said publication* was made," &c. Herein the case differs widely from that of *Sargeant* v. *The State Bank of Indiana*, 12 Howard, 371, which is relied upon here. In that case, the record recited that "due and legal notice" had been given, without setting out the notice or proof of service. It was held that the record was conclusive.

In the case before us, the record shows precisely on what the Court acted. It sets out the notice and proof of its publication, and upon the publication of that notice the Court acted. Had the record not contained the notice or the proof of its publication; or, indeed, had it been entirely silent on the subject of notice, it would perhaps be presumed to have properly acquired jurisdiction over the persons of the defendants. *Horner* v. *Doe*, 1 Ind. 130; *Babbitt* v. *Doe*, 4 Ind. 355. But it is said that "when the record itself shows expressly, or by necessary implication, that a foreign or domestic, a superior or inferior, tribunal has proceeded without notice, and without any sufficient excuse or reason for the want of notice, no further presumption can be made in its favor, and it may be impeached and set aside collaterally, as well as in the course of regular proceedings in error. 1 Smith's Lead. Ca., 5 Am. Ed., p. 843, and authorities there cited.

In the case before us, a subpœna had been returned "not found," as to *Matthews* and *Tufts*, and it was abundantly clear from the record that the Court took, or rather sought to take, jurisdiction of the defendants therein, *Matthews* and *Tufts*, by virtue only of the notice thus set out and its publication. That notice being insufficient and void, it follows that the decree was void, and the record properly rejected.

We perceive no legitimate ground for the introduction of the record as an estoppel *in pais*. To be sure, a person may,

Nov. Term,
1861.

Cox
v.
Matthews.

by standing by and seeing his property sold, under circumstances that require him to interpose, be afterward estopped from setting up his title. See, on this subject, *Gatling* v. *Rodman*, 6 Ind. 289; *The State* v. *Holloway*, 8 Blackf. 45.

In *Lawrence* v. *Brown*, 1 Seld. 394, it was held that to constitute an *estoppel in pais*, it was necessary not only that the person to be estopped, by his words or conduct, should have caused the other party to believe that by his purchase he would acquire a title discharged of his claim, but that the purchaser must have acted upon such belief in making such purchase and in the payment of the purchase money. Again, it is said that "good faith and diligence must, moreover, occur on one side, with the want of them on the other; and no estoppel will arise in the absence of actual fraud, unless the purchaser was destitute, not only of all actual knowledge of the true state of the title, but of the means of acquiring knowledge by a recourse to the record." 2 Smith's Lead Ca., 5 Am. Ed. p. 662. If the purchasers from *Gordias A. Hall* and *Ruth Wetherell* purchased on the faith of the decree, they purchased with the means before them of knowing the title of said *Matthews* and *Hannah Tufts*, for the bill set forth the relationship which they sustained to *Lucy Hall*, and they must be presumed to have known that the decree against *Matthews* and *Tufts* was void, for the want of notice to them. It was their own fault and negligence that they thus purchased, with the means before them of knowing that they were acquiring a title to only one half of the land.

We perceive nothing in the evidence offered outside of the record, that would entitle the record to admission in connection with such evidence, as such estoppel.

It was proved that both *Matthews* and *Tufts* advanced to *Hall* seventy-five dollars for the purpose of assisting in carrying on a suit to recover the property, and that after the decree the money was refunded to them by *Hall*. An extract from the deposition of *Gordias A. Hall*, which was used on the trial, will best explain the nature of the transaction. He says, that "previous to the commencement of that suit, and as I have before stated, on information of Mr. *Farmer*, the administrator, I supposed *John Matthews*,

Nov. Term,
1861.

Cox
v.
Matthews.

*Danforth K. Tufts* and wife, *Hannah Tufts,* were co-heirs with myself and Mr. *Wetherell,* and *Ruth Wetherell* his wife, and a fund was made up of seventy-five dollars each, by *Matthews* and *Tufts,* to commence proceedings and suits to obtain the property represented by *Farmer,* said administrator, and belonging to the estate of said *Hall,* deceased; and *Matthews* and *Tufts* did place in my hands those amounts," &c. The money, it seems, was raised for the purpose of carrying on a suit to recover the property represented by the administrator, for the benefit of all the heirs of *Lucy Hall,* including, of course, *Matthews* and *Tufts.* These last parties lived in a distant State, and *Hall,* instead of bringing a suit to recover the property in the name, and for the benefit, of all the heirs of *Lucy Hall,* as the furnishing of the money implies, brought no such suit at all. Whether he was guilty of bad faith, or not, we need not determine; but it is certain that the money never was applied to the purposes for which it was intended. He brought a suit claiming the property for himself and Mrs. *Wetherell,* to the exclusion of *Matthews* and *Tufts,* and after he had succeeded in getting the decree against them, they, upon being informed that the Court had decided against them, and perhaps without knowing the nature of the suit that had been thus brought and determined, received back the money that had been advanced by them. There is clearly nothing in these circumstances that should entitle the record to admission in evidence.

There is but one more point made in the brief of counsel for the appellants, and that relates to an instruction of the Court to the jury, as follows: that "to constitute an equitable estoppel of the rights of the plaintiffs in this action, it must be shown that the plaintiffs were apprized of each sale to innocent vendees, before it was made, so that they might have had an opportunity to inform the purchaser of their interest in the property sold."

The counsel say: "Now if this instruction is law, the doctrine of equitable estoppel is overthrown in *Indiana;* for how could a person have knowledge of an event before it happened."

Nov. Term, 1861.

We think the instruction is well enough. Its evident meaning is, that it must be shown that the plaintiffs were apprized of each intended sale, &c., before it was made, and the jury could not have understood it otherwise.

*Per Curiam.*—The judgment is affirmed, with costs.

*S. A. Huff, G. O. Behm, J. E. McDonald* and *A. L. Roache,* for the appellees.