ROBERTSON ET AL. *v.* BURRELL ET AL.

DESCENT.—*Half-Blood.*—*Ancestor.*—The sixth section of the statute of descents, 1 G. & H. 292, should be construed as if it read as follows: Kindred of the half-blood shall inherit equally with those of the whole blood; but if the estate shall have come to the intestate by gift, devise, or descent, from any ancestor, those kindred of the half-blood only who are of the blood of such ancestor shall inherit: *Provided*, that on failure of such kindred of the half-blood having the blood of such ancestor, other kindred of the half-blood shall inherit as if they were of the whole blood.

SAME.—Under this construction of the section, sisters and brothers of the half-blood are only postponed in favor of half-brothers and sisters who are of the blood of the ancestor from whom the land descended, and not in favor of the uncles and cousins of the deceased of the blood of such ancestor; and where the deceased left no brothers or sisters of the blood of such ancestor, then the brothers and sisters not of the blood of such ancestor inherit.

APPEAL from the Jackson Circuit Court.

DOWNEY, J.—This action, which was brought by the appellants against the appellees, involves the question as to

which of the parties, those who are plaintiffs, or those who are defendants, are the owners of certain real estate described in the pleadings. It is unnecessary to refer more particularly to the pleadings. The facts, upon which the legal question arises, are agreed upon and set out in the record as follows:

"William Robertson died, intestate, in Jackson county, Indiana, on the 24th day of August, 1854, seized in fee simple of certain lands, among which were the lands in the complaint described; said William Robertson deceased, and among his other children was a daughter named Rebecca, who married Bartholomew H. Burrell, on the 16th day of November, 1843; the only issue of that marriage was George Burrell, who was the son of said Rebecca and Bartholomew H., and the said George was born on the 23d day of December, 1845; said Rebecca Burrell departed this life, intestate, at Jackson county, Indiana, on the 2d day of October, 1846, and left surviving her said husband and child; also, among the children of said William Robertson, deceased, was another daughter, named Mary, who was married to Cyrus Crabb, and the only issue of that marriage were Orville S. Crabb, Hudson Crabb, and James R. Crabb. The said Mary departed this life, intestate, at Jackson county, Indiana, and left surviving her her said children, who are her only children and heirs-at-law, and who are still surviving, and are plaintiffs in this suit, and also left surviving her her said father, William Robertson, now deceased; that said Bartholomew H. Burrell married his second wife, Margaret Wray, who was no kin to said William Robertson, deceased, on the 31st day of December, 1850, and had born to him, the issue of said marriage, the following named children, to wit: Martha Burrell, Charles W. Burrell, John R. Burrell, Oliver B. Burrell, who are the only issue of said marriage, and who are still living, and are defendants in this suit; that said Bartholomew H. Burrell departed this life at Jackson county, Indiana, intestate, on the 7th day of November, 1865, and left surviving him his said son George, by his first wife, and his said

children before named, by his second wife, and also left surviving him his widow, the said Margaret. When said William Robertson, deceased, departed this life, he left surviving no widow, but left surviving him said William Robertson, James Robertson, who are his sons, and the said George Burrell, Orville S. Crabb, Hudson Crabb, and James R. Crabb, who are his grandchildren, and that said sons and grandchildren are the only heirs-at-law of said William Robertson, deceased, and are plaintiffs in this action; that said George Burrell departed this life, intestate, on the 21st day of December, 1866, seized in fee simple of the lands described in the complaint and cross complaint herein; that said George Burrell never had been married, and left no widow, nor children, nor the descendants of any, nor father nor mother surviving him, but left surviving him his half-brothers and sister, to wit, the said Martha Burrell, Charles W. Burrell, John R. Burrell, and Oliver B. Burrell, defendants in this action; and also left surviving him the said William and James Robertson, who are his uncles on his mother's side, and the said Orville S. Crabb, Hudson Crabb, and James R. Crabb, who are his cousins on his mother's side; that his said uncles and cousins were his nearest maternal kin, and also his nearest kin who are of the blood of said William Robertson, deceased; that said half-brothers and sister had none of the blood of said William Robertson in them; that the real estate whereof said William Robertson died seized was duly and legally partitioned among his heirs-at-law, in 1855, by the judgment and decree of the Jackson Court of Common Pleas, and in said partition the land described in the complaint and cross complaint was set off and assigned to the said George Burrell, as and for his part in severalty in the lands whereof his said grandfather died seized, and said George H. Burrell took possession of the same and remained in possession until his death; that these plaintiffs and defendants, ever since the death of said George Burrell, have claimed to be the owners of said land by virtue of the law of descent, and that if said plaintiffs are

the owners of said land, under said law of descent, then said claim of defendants is a cloud upon plaintiffs' title thereto, and greatly disturbs them in the enjoyment of said lands, and impairs the value of their title thereto, and that defendants are in possession of said land under claim of title; that if defendants are the owners of said land, according to said law of descent, then plaintiffs' claim thereto is a cloud upon defendants' title thereto, and is a great disturbance of defendants' enjoyment of said land, and diminishes greatly the marketable value of said title.

"It is agreed by plaintiffs and defendants in the above-entitled case, that the above are the facts in the case, and shall be taken as the evidence in the case equally in support of the complaint and cross complaint, and shall have the same force and effect in said case as if the same facts had been duly and legally proved by witnesses on the trial of said case.

"W. K. MARSHALL,

"Attorney for Plaintiffs.

"JASON B. BROWN,

"Attorney for Defendants."

The case involves a construction of the sixth section of the statute of descents. 1 G. & H. 292. That section is in the words following, to wit:

"Kindred of the half blood shall inherit equally with those of the whole blood; but if the estate shall have come to the intestate, by gift, devise, or descent, from any ancestor, those only who are of the blood of said ancestor shall inherit; provided, that on failure of such kindred, other kindred of the half blood shall inherit as if they were of the whole blood."

Sir William BLACKSTONE, referring to his table of descents, thus defines kindred of the whole and of the half-blood: "A kinsman of the whole blood is he that is derived, not only from the same ancestor, but from the same couple of ancestors. For as every man's own blood is compounded of the bloods of his respective ancestors, he only is properly of the whole or entire blood with another, who hath (so far

as the distance of degrees will permit) all the same ingredients in the composition of his blood that the other had. Thus, the blood of John Stiles being composed of those of Geoffrey Stiles, his father, and Lucy Baker, his mother, therefore his brother Francis, being descended from both the same parents, hath entirely the same blood with John Stiles; or he is his brother of the whole blood. But if, after the death of Geoffrey, Lucy Baker the mother, marries a second husband, Lewis Gay, and hath issue by him; the blood of this issue, being compounded of the blood of Lucy Baker (it is true) on the one part, but that of Lewis Gay (instead of Geoffrey Stiles) on the other part, it hath therefore only half the same ingredients with that of John Stiles; so that he is only his brother of the half-blood, and for that reason they shall never inherit to each other. So also, if the father has two sons, A. and B., by different venters or wives; now these two brothers are not brothers of the whole blood, and therefore shall never inherit to each other, but the estate shall rather escheat to the lord." 2 Bl. 227.

According to the canons of descent of the English common law, as we have seen, kindred of the half-blood did not inherit from each other in any case. Mr. BLACKSTONE states the reason for this rule, and attempts to justify it, while at the same time admitting its hardship.

While there is a general sameness in the statutes of descents of the various states, they differ in many respects in their details. The question in this case, as we have already said, turns upon the proper construction of section six of the statute of descents of this State, which differs entirely from the common law rule on the same subject.

George Burrell, deceased, was the owner, at the time of his death, of the real estate in question, which had descended to him from his maternal grandfather, William Robertson, deceased, but not through his mother, she having died before her father. George Burrell left surviving him no wife, child, brother, or sister of the whole blood, or father or mother, but he left the appellees, Martha Burrell, Charles

W. Burrell, John R. Burrell, and Oliver B. Burrell, children of his father by a second wife, and consequently sister and brothers of the half-blood to him, but who are not of the blood of his ancestor from whom he inherited the real estate in question.    He also left surviving him the appellants William Robertson and James Robertson, his uncles on his mother's side, and Orville S. Crabb, Hudson Crabb, and James R. Crabb, who are his cousins on his mother's side, and consequently of the blood of the ancestor from whom the estate was inherited.    Hence the question is, do the half-sister and half-brothers of the deceased inherit the lands in question from him, or do his uncles and cousins inherit it?   Counsel differ widely as to the construction to be put on the section in question.   Counsel for the appellants insists that "there must be no kindred at all, having both the blood of the deceased and of his ancestor, in any degree however remote, before the half-blood kin of the intestate who are not of the blood of his ancestor can inherit, however near they may be."    Counsel for the appellees, on the contrary, argues the case thus:

"The kindred referred to in this section of the statute, and the only kindred contemplated in it, is the kindred mentioned in it; none other.   The section explicitly mentions the kindred it refers to.   It says, 'kindred of the half-blood.' It is that class of kindred, and that only; not general kindred.    And when we come to inquire into the meaning of this statute, and to construe it correctly, we must take the words 'kindred of the half-blood' altogether.   We cannot separate them, and leave off the explanatory words, which refer to the kind and character of kindred contemplated in the section.   And the word 'those,' used in the third line of the section, refers to the particular class of kindred mentioned in the section, to wit, 'kindred of the half-blood.' Therefore, the words 'those only who are of the blood of such ancestor shall inherit' mean that the kindred of the half-blood must have the blood of the stock of descent in

them, to enable them to inherit property from an intestate which was acquired by him by gift, devise, or descent. This interpretation of this clause of this section is further sustained by its concluding words, which are, 'that on failure of such kindred, other kindred of the half-blood shall inherit as if they were of the whole blood.' The words 'such kindred' have reference to the class of kindred who have not the blood of the ancestor in them; and the words 'other kindred of the half-blood,' immediately following them, clearly show that there is but one class of kindred contemplated in the section, and that is kindred of the half-blood.

"If this section was complete without the proviso, I am free to admit that appellees could not inherit the estate in question, because they have none of the blood of the ancestor in them. But the learned counsel for the appellants insists that, by reason of the proviso, there must be a total failure of all the kin of the intestate who have the blood of the ancestor in them, before the appellees can inherit this estate. The language of the proviso is this: 'Provided, that on the failure of such kindred, other kindred of the half-blood shall inherit as if they were of the whole blood.' The words 'on the failure of such kindred' mean on the failure of kindred of the half-blood who have the blood of the ancestor in them, not a failure of general kindred who have the blood of the ancestor in them. And on failure of the kindred of the half-blood who have the blood of the ancestor in them, kindred of the half-blood who have not the blood of the ancestor in them inherit as if they were kindred of the whole blood. The appellees are kindred to the intestate of the half-blood, but have none of the blood of the ancestor in them. But there are no kindred of the intestate of the whole blood, nor kindred of the half-blood who are as near in degree of kindred to him as the appellees are, who have the blood of the ancestor in them; consequently, appellees are the proper persons upon whom the descent should be cast."

The circuit court placed the construction upon the section

contended for by counsel for the appellees, and held that the sister and brothers of the half-blood were only postponed in favor of half-brothers and sisters who were of the blood of the ancestor from whom the land descended, and not in favor of the uncles and cousins of the deceased of the blood of such ancestor; and that as the deceased left no brothers or sisters of the blood of such ancestor, the sister and brothers not of the blood of such ancestor inherited the land.

We are referred by counsel for the appellants to the case of *Gardner* v. *Collins*, 2 Pet. 58, which was upon the statute of Rhode Island. But the statute in question was so different from ours, that no ruling upon it can be an authority in this case. There has been no case in this court involving the point in question here. Little help in construing the statute in question can be obtained from the adjudications of the courts of other states, on account of the difference in the phraseology of the statutes. We have examined the following cases, which we note here more for convenience of reference hereafter, if necessary, than because they are exactly in point here: *Simpson* v. *Hall*, 4 Serg. & R. 336; *Baker* v. *Chalfant*, 5 Whart. 477; *Hart's Appeal*, 8 Pa. St. 32; *Hall* v. *Jacobs*, 4 Har. & J. 245; *Sheffield* v. *Lovering*, 12 Mass. 505; *Den* v. *Jones*, 3 Halst. 340; *Den* v. *McKnight*, 6 Halst. 385; *Den* v. *Billups*, 2 Dev. & Bat. 308; *Gardner* v. *Collins*, 3 Mason, 398; *Armington* v. *Armington*, 28 Ind. 74; *Aldridge* v. *Montgomery*, 9 Ind. 302; *Henson* v. *Ott*, 7 Ind. 512; *Clark* v. *Sprague*, 5 Blackf. 412.

After the best examination which we can bestow upon the question, we have come to the conclusion that the construction placed upon the section by the circuit court is correct. We think it should be construed as if it read as follows: "Kindred of the half-blood shall inherit equally with those of the whole blood; but if the estate shall have come to the intestate by gift, devise, or descent, from any ancestor, those kindred of the half-blood only who are of the blood of such ancestor shall inherit; provided, that on failure of such kindred of the half-blood having the blood

of such ancestor, other kindred of the half-blood shall inherit as if they were of the whole blood."

In arriving at the meaning of a statute, the whole system of legislation upon the subject-matter may be taken into consideration, in order to aid in the construction of it; hence other statutes *in pari materia*, whether they have been repealed or not, may be considered. Smith Com. Con. Constr. 751. We have accordingly examined our legislation on this subject from the beginning. The ordinance of 1787 provided that there should "in no case be a distinction between kindred of the whole and half-blood." 1 G. & H. 710. The first express mention which we find of kindred of the half-blood in the statutes of the State is in the Revised Statutes of 1838, p. 237, where it is provided that half-brothers or sisters, or their descendants, shall, if there be brothers or sisters of the whole blood, inherit each to the amount of one-half the share of a full brother or sister; and if there is no brother or sister of the whole blood alive, then the half-brothers or sisters or their descendants shall inherit in the same way as if they were full brothers or sisters or their descendants.

The statute of 1843, p. 436, sec. 4, provided as follows: "Kindred of the half-blood, and their descendants, shall inherit equally with those of the whole blood in equal degree of consanguinity to the intestate; unless the inheritance shall have come to the intestate by descent, devise, or gift of some of his ancestors; in which case such kindred of the half-blood and their descendants shall not inherit, except they also be of the blood of such ancestor; but if in any such case there be no relatives of the whole blood, in equal or nearer degree of consanguinity to such intestate, nor their descendants, entitled to take such inheritance according to the provisions of this article, then such kindred of the intestate, of the half-blood, and their descendants, shall take the same as if they were of the whole blood." It cannot be reasonably supposed that the legislature, after having thus liberally provided for kindred of the half-blood in the revi-

sions of 1838 and 1843, intended by that of 1852 to postpone them until after there was a failure of all kindred of the intestate who have the blood of the ancestor from whom the estate descended, however remote in degree. But it can hardly be necessary or useful to pursue the inquiry further,

The judgment is affirmed, with costs.

PETTIT, C. J., dissents.

*W. K. Marshall*, for appellants.

*J. B. Brown*, for appellees.