## Cloud et al. *v.* Bruce.

Descents.—*Degree of Kindred.—Rule for Computing.*—The degrees of kindred are computed in this State according to the rules of the civil law.

Same.—*Common Law.—Civil Law.*—Neither the common nor civil law canons of descent were ever in force, as such, in this State.

Same.—*Statute of Descents.*—The statute of descents in this State covers every conceivable state of circumstances that can surround the descent of property.

Same.—*Great-Grandmother.—Great Aunt or Uncle.*—Under section 5, 1 R. S. 1876, p. 409, of the statute of descents of this State, the real estate of an intestate descends to a great-grandmother, as being " the next of kin in equal degree of consanguinity," in preference to a great aunt or uncle of the same paternal or maternal line.

From the Marion Superior Court.

*B. Harrison, C. C. Hines, W. H. H. Miller, A. G. Porter, W. P. Fishback, G. T. Porter, G. H. Chapman, U. J. Hammond, E. F. Ritter* and *L. Ritter,* for appellants.

*C. Baker, O. B. Hord* and *A. W. Hendricks,* for appellee.

Perkins, J.—Suit to quiet title to real estate.

John W. Johnson was the owner of two tracts of land, in Marion county, Indiana. He inherited one-half of said tracts of land from his father, Harrison L. Johnson, who died intestate in 1856, and the other half from his mother, Margaret Peck Johnson, widow of said Harrison L. Johnson, said Margaret having died intestate in 1857.

John W. died, childless and intestate, in 1872. He was never married. It is admitted on both sides, "that the said John W. Johnson left surviving him the following kindred in the maternal line, viz.: his aunt, Harriet Williams, sister of his mother, and his two cousins, George W. Baker and Margaret M. Baker, children of a deceased sister of the mother of the intestate; and that the half of the two tracts that went to the maternal line vested in the said Harriet Williams and George W. and Margaret M. Baker, and that George Bruce, plaintiff in this suit, had procured conveyances in fee of the interest of the said Harriet Williams and George W. Baker, in both tracts," the said Margaret M. Baker still retaining her one-eighth interest, which said Bruce, plaintiff, concedes to her, and the other defendants do not claim. There is no controversy as to the half of said two tracts which went to the maternal lien.

The appellee, Bruce, claimed title to one-half of the land of which said John W. Johnson died seized, by reason of his holding a deed thereto from Nancy Reagan, his wife's mother, and great-grandmother of John W., executed after the death of John W. Johnson.

This is the half of said tracts which went to the paternal line, that is, in this case, to the next of kin, in the paternal line, of said John W. Johnson.

It is distinctly admitted on both sides, that, according to the facts that surrounded John W. Johnson at the time of his death, the half of the two tracts of land in question went by inheritance to his "next of kin in equal degree of consanguinity" in the paternal line, under the provisions of the 5th section of our statute of descent and distribution.

The ultimate question is as to who was entitled to take as next of kin of John W. Johnson in the paternal line, under this section. Was it Nancy Reagan, his great-grandmother, under whom the plaintiff claims title, or

was it his great uncles and aunts, and the descendants of such of them as had died?

The court below, the Marion Superior Court, held that the great-grandmother was the nearest of kin, and decreed accordingly in favor of the plaintiff, the appellee here, affirming the decree of that court in special term.

The correctness of that decision is the point in controversy to be determined by this court.

The preliminary question arises: By what test are we to determine who may be the next of kin of said John W. Johnson?

On this point, we have no doubt. We are to ascertain this fact by the rules of the civil law. It was, in effect, so held in this State prior to 1840. See *Clark* v. *Sprague,* 5 Blackf. 412. The code of 1843, p. 438, sec. 129, enacted, that "The degrees of kindred shall be computed according to the rules of the civil law."

It was not necessary to continue the enactment, because it was the law of the State before and without that enactment. It was, in effect, simply declaratory of the existing law. See 2 Kent Com. 413, 422, 4 Kent Com. 409, 2 Bouv. Dict. 226, *McDowell* v. *Addams,* 45 Pa. State, 430, *Clayton* v. *Drake,* 17 Ohio State, 367, where the reasons may be found fully stated. They are applicable in this State. Here, personal and real estate descend alike, and the English rule as to personal property, in determining next of kin, is applied to both. See *Brady* v. *Richardson,* 18 Ind. 1. We want but one rule, and that the more just and equitable one—the one in harmony with the principles of our government.

Another preliminary question to be answered is this: Do the statutes of our State, regulating the descent and distribution of property, embody the entire law upon that subject, or are such descent and distribution governed partly by the statutes and in part by the common law?

Counsel for appellants contend for the latter proposition. They say the statutes are imperfect; that they do not

·" provide for every conceivable case." This is an impor-
·tant question in the cause.

We have come to the conclusion, that neither the com-
mon nor the civil law canons of descent, as such, were
ever in force in this State.

It is a well established rule of law, that, where a statute
·of a State upon a given subject covers the whole of such
subject, it excludes the common law upon that subject.

The first government established in the territory, now
State of Indiana, was created by the ordinance of 1787.
'That ordinance regulated the whole subject of the descent
·of property in the territory, and necessarily excluded,
while in force, foreign laws upon that subject. See the
·ordinance, Rev. Stat. 1843, p. 20.

In June, 1816, a constitution of the State was formed.
'The first Legislature under that constitution enacted on
·the 2d day of January, 1817, a law, a statute "to regu-
.late descents." Acts 1817, p. 141.

On the 2d day of January, 1818, just one year after the
·act regulating descents was passed, the following act be-
·came a law, and has been continued in force ever since :

" Be it enacted by the General Assembly of the State of
Indiana, That the common law of England, all statutes
·or acts of the British Parliament made in aid of the com-
mon law, prior to the fourth year of the reign of King
.James the first, excepting the second section of the sixth
·chapter of forty-third Elizabeth, the eighth chapter, thir-
teenth Elizabeth, and ninth chapter, thirty-seventh Henry
·eighth, and which are of a general nature, not local to
that kingdom, and not inconsistent with the laws of this
State; and also, the several laws in force in this State
shall be the rule of decision, and shall be considered as
·of full force until repealed by legislative authority." Rev.
·Stat. 1824, p. 256.

As to the adoption of the common law by the territory,
·see *Short* v. *Stotts*, 58 Ind. 29.

Our present statute of descents commences on page

408, 1 R. S. 1876. It covers the entire subject. We copy three sections:

" Sec. 2. If any children of such intestate shall have died intestate, leaving a child or children, such child or children shall inherit the share which would have descended to the father or mother, and grandchildren, and more remote descendants, and all other relatives of the intestate, whether lineal or collateral, shall inherit by the same rule : *Provided,* That if the intestate shall have left at his death grandchildren only alive, they shall inherit equally.

" Sec. 5. If there be no person entitled to take the inheritance according to the preceding rules, it shall descend in the following order :

"*First.* If the inheritance came to the intestate by gift, devise, or descent, from the paternal line, it shall go to the paternal grandfather and grandmother, as joint tenants, and to the survivor of them; if neither of them be living, it shall go to the uncles and aunts in the paternal line, and their descendants if any of them be dead, and if no such relatives be living, it shall go to the next of kin in equal degree of consanguinity, among the paternal kindred; and if there be none of the paternal kindred entitled to take the inheritance as above prescribed, it shall go to the maternal kindred in the same order.

" Sec. 11. The estate of a person dying intestate without kindred capable of inheriting, shall escheat to the State," etc.

The statute is full and complete. It provides " for every conceivable case ; " that is, by its provisions all the property of a decedent can be legally awarded to a legal recipient. It contains a series of hypotheses, and declares who shall take, on facts existing, as given in each hypothesis. It then provides, that, if a case arises, not within any hypothesis given, the estate " shall go to the next of kin," etc., and further, by section 11, that, if the

decedent leaves no next of kin, "his estate shall escheat," etc.

Counsel for appellants say that the statute contains no provision for descent to a great-grandmother, and, therefore, that the great-grandmother can not take, because one of the common-law canons of descent forbade that inheritances should "lineally ascend."

But the statute meets her case in the clause touching the next of kin. And, in our opinion, looking at the history of the law of descents in this State, the presumption should be, that, where a canon of the English law of descents is not found in our statute, it was omitted because it was not desired that it should be in force in this State.

The State was not bound to adopt or continue any one of the English canons in force. She was at liberty to act her pleasure on the subject. There was no reason why she should adopt them, while there were cogent ones against the adoption. They were, many of them, repugnant to the spirit of our institutions and laws. The Legislature proceeded to regulate the descent of property, by the enactment of a law regulating the whole subject. It adopted or originated all the rules on the subject it desired.

Can any one doubt that this legislation occupied the whole field on this subject, and thus operated to exclude the common law? We think there can be no doubt on this subject. Such seems to have been the opinion of the courts of the State.

In *Cox* v. *Matthews,* 17 Ind. 367, it is said: "Our laws [statutes] have defined and determined who shall inherit estates upon the death of a person seized of lands."

In *Murphy* v. *Henry,* 35 Ind. 442, it is said: "The common-law canons of descent have been overturned in this State by our statute of descents, and in determining the nature and character of the estate which Mrs. Henry

inherited from her husband, we must look to the language of the statute and the decisions of this court."

According to our view, having never existed here, they have not been overturned, but excluded. Decisions in other States justify this conclusion. In *Sheffield* v. *Lovering*, 12 Mass. 490, decided in 1815, the court say, touching a question of descent: "This could not be made a question at the common law: but with us, from the first settlement of the country, the rules of the descent and distribution of real and personal estate have generally been alike, and they depend wholly on our own statutes."

In *Penn* v. *Cox*, 16 Ohio, 30, decided in 1847, the court say, touching the question of the descent of certain property: "The law of descents must determine this question. And this is found in the act regulating descents and the distribution of personal estates," etc., referring to Swan's Statutes. "We understand the 'act regulating descents and the distribution of personal estates' as embracing the whole subject, and intended to provide for all possible cases."

In *Drake* v. *Rogers*, 13 Ohio St. 21, decided in 1861, the court cite and approve *Penn* v. *Cox*, *supra*, and add: "The same views of statutory rules of descent have been entertained and expressed by the courts of other States."

In this connection, we notice another point made by counsel for appellants, in their able brief, in discussing the doctrine of representation, which we shall, later in this opinion, consider:

"Our opponents will attempt to escape from these conclusions by arguing that the civil-law rules for computing degrees of kindred prevail in this State, and that under them Mrs. Reagan was the 'next of kin' entitled to the half of the land which goes to the paternal kindred.

"'Next of kin' must mean those who stand, in the eye of the law, in nearest relationship to the deceased. We have already shown who are nearest in relationship by

the rules of the common law, namely, Mrs. Dovey Bruce and the brothers and sisters of Jeremiah Johnson living, and the descendants of deceased brothers and sisters. But suppose the question were to be referred to the civil law for determination. It is a rule of the civil law, that *agnates* inherit before *cognates*. Sandars' Justinian's Inst., liber 3, tit. 5, sec. 1. The succession was given first to the *sui haeredes*, then to the *agnati*, then to the *cognati*. *Id.* '*Sui haeredes*' are 'those who, at the death of the deceased, were under his power, as a son or a daughter, a grandson or a granddaughter by a son, a great-grandson or a great-granddaughter by a grandson of a son,' etc. * * * 'But a grandson or granddaughter, a great-grandson or great-granddaughter, is not reckoned among the *sui haeredes*, unless the person preceding them in degree has ceased to be under the power of the ascendant, either by death or some other means; as by emancipation.' Just. Inst., liber 3, tit. 1, sec. 2. '*Agnati* are those who are related to each other through males; that is, are related through the father, as, for instance, a brother by the same father, or the son of a brother, or the son of such a son; or, again, a father's brother, or a father's brother's son, or the son of such a son,' etc. Just. Inst., liber 1, tit. 15, sec. 1. But John W. Johnson and Mrs. Reagan were not related through males. They were not descended from the same ancestor. *Cognati* are all those who are connected together by ties of blood. Sandars' Just. Introd., sec. 45.

"Blackstone says, book 2, p. 234, speaking of the English rules or canons of descent: 'The seventh and last rule or canon is, that in collateral inheritances the male stocks shall be preferred to the female (that is, kindred derived from the blood of the male ancestors, however remote, shall be admitted before those from the blood of the female, however near),—unless where the lands have, in fact, descended from the female.' That this was the true

foundation of the preference of the *agnati*, or male stocks, in our law will further appear," etc.

But it seems to us, the rule has nothing to do with the question of "next of kin," as used in our statute, and does not obtain in this State, nor, generally, in the United States, because inconsistent with our institutions and laws. And a canon of descent is one thing; a rule for the ascertainment of next of kin is another. In reference to this canon of descent of the Roman law, and the English, founded upon it, we quote the language of Judge Worden, in speaking, in *Cox* v. *Matthews*, 17 Ind. 367, of another principle of common law, as follows:

"This principle may have been acted upon in some of the other States of the Union, as a part of the common law, but we are of opinion that in this State, the doctrine of shifting descents never prevailed. Here, undoubtedly, a child *in ventre sa mere* is considered as *in esse*, for the purposes of inheriting; but when the descent is cast, and the estate vested in him who is heir at the death of the ancestor, the estate can not be divested by the subsequent birth of nearer heirs. The feudal policy of tying up estates in the hands of a landed aristocracy, and which had much to do with the doctrine of shifting descents, as recognized by the English canons of descent, is contrary to the spirit of our laws, and the genius of our institutions. It has been the policy in this State, and in this country generally, not only to let estates descend to heirs equally, without reference to sex or primogeniture, but also to make titles secure and safe to those who may purchase from heirs upon whom the descent may be cast. Our laws have defined and determined who shall inherit estates upon the death of a person seized of lands."

Further, the civil-law canon of descent mentioned was only allowed to exist during the rude ages of the Roman Empire. It disappeared in the progress of civilization. It was abrogated by Justinian more than three hundred years before the common or civil law prevailed in the

kingdom of England. Cooper Just., liber 3, tit. 3, secs. 4 and 5. See 2 Domat Civil Law, 181, where the improved and matured civil law is given.

It remains that we consider the question of representation. Upon this, we make the following extract from the learned opinion delivered by Judge SOLOMON BLAIR, on the decision in this cause, on appeal in the Superior Court:

"In the third and next place, the claim of the defendants, Mary Cloud and others, is based upon the principle .of representation, as provided for in the second section of the statute of descents. Admitting that the rule of the civil law should prevail in computing degrees of kindred, they claim, that, being descendants of ——— Johnson, the great-grandfather of John W. Johnson, they inherit the share which the great-grandfather would have inherited had he been living at the time of the death of John W. Johnson; that he was of equal degree of kindred to the intestate with Nancy Reagan, and that these defendants represent him, and are entitled to take the share which he would take if he were living.

"The first section of the statutes of descents provides for descent to children. The second section provides, that, if any child of the intestate shall have died, leaving descendants alive, they shall inherit the share which should have descended to the father or mother.

"Thus far the two sections are canons of descent.

"The following is then added to section two: 'And grandchildren, and more remote descendants, and all other relatives of the intestates, whether lineal or collateral, shall inherit by the same rule,' etc.

"This latter clause is not a canon of descent; that is, it does not prescribe who shall inherit, but merely announces a rule by which those who are mentioned in the preceding and succeeding sections shall inherit. While the principle of representation is one that has always been favored by the civil law, and is in accordance with the

genius of our statute, it is not one to be applied in every conceivable case, and it is only to be used where the terms of the succeeding sections of the statute make it applicable.

"In this third section it should be applied. By that section, if an intestate dies without lawful issue or their descendants alive, one-half the estate goes to the father or mother, or the survivor, if either be dead, and the other half to the brothers and sisters and to the descendants of such as are dead. Here may be an application of the rule to collateral relations. But for the rule, if an intestate should leave two brothers and four nephews, children of the deceased brother, him surviving, one-half of the estate would be equally divided between the six heirs, the two brothers and four nephews. With this rule, the half would be divided into three equal parts, the four nephews taking the part which would have descended to their father, had he been living.

"The fourth section affords another instance where the application of the rule is expressly provided for.

"The latter part of the fifth section does not, in my opinion, afford any room for the application of the principle. In the absence of all persons entitled to take by the preceding sections, and of those who are named as entitled to take in the first clause of the fifth section, it is provided, that the estate 'shall go to the next of kin in equal degree of consanguinity.' I take this to mean the next of kin who are living at the death of the intestate. To say that it means a class of persons, whose ancestors, if living, would inherit it, it seems to me, would be making a new canon of descent. This we can not do by judicial construction."

In *Fidler* v. *Higgins,* 6 C. E. Green, 138, a case relied upon by the appellants, the three following propositions were decided by Chancellor ZABRISKIE:

1. "The descent of real estate in·New Jersey is gov-

erned by the rules of the common law, so far as these rules have not been changed by statute."

2. " The common-law rule, that among collateral relatives lineal descendants shall represent their ancestor *ad infinitum,* has not been altered, either expressly or by implication, by the statutes of New Jersey regulating descents."

3. That the degree of consanguinity must be ascertained by the common, not the civil, law.

The Chancellor, in closing his opinion, said, that law judges of the highest authority had intimated opinions different from those expressed by him in the cause; that the questions would probably be settled eventually by the Court of Appeals, and that he would decide the case before him on his own views, and thus facilitate the settlement of the questions by the Court of Appeals.

The same questions soon after arose before Chancellor Runyon, in the case of *Schenck* v. *Vail,* 9 C. E. Green, 538, and he adopted the opinion in the case of *Fidler* v. *Higgins* as his opinion in the case of *Schenck* v. *Vail,* and upon it this latter case went directly to the Court of Appeals, in which court it was unanimously decided, that:

" 1.   Under the sixth section of the statute of descents, the class of kinsmen who are next in degree of consanguinity to the intestate, take the land in exclusion of those who stand in a more remote degree.

" 2.   By force of this section, the common-law right of representation does not exist. So that first cousins take in preference to cousins of a more distant degree.

" 3.   In calculating the degrees of consanguinity in this State, the civil and not the canon [the common] law rule is to be resorted to."

In *Clayton* v. *Drake,* 17 Ohio St. 367, the court say:

" We know of no case in which it has ever been held under any of these statutes, that ' next of kin ' can be construed so as to include representatives of next of kin. That representatives are not within the meaning of the

words themselves seems to have been the legislative understanding, when, by the amendatory act of 1865, the legal representatives of the next of kin were expressly named.

" The words of the statute are clear and explicit; ' the estate shall pass to the next of kin to the intestate.' The plaintiffs are not next of kin; and to admit them to a share in the inheritance, in any other character, would be an act of direct legislation."

The next of kin are living persons, and take per *capita*. The deceased next of kin could not take; and the statute did not authorize their descendants, they not being in the same degree of consanguinity, to take in their stead.

As to cases founded upon the statute of Rhode Island, see *Robertson* v. *Burrell*, 40 Ind. 328.

We will not extend this already too lengthy opinion.

The judgment below is affirmed, with costs.